## No. 726.

SUCCESSION OF H. T. COTTINGHAM. OPPOSITION OF THE WIDOW.

29 669
e1151039

The preference on the proceeds of his debtor's property, which a creditor has acquired by procuring the cancellation of a fraudulent mortgage on that property, is inferior in rank to the widow's claim under the homestead law.

APPEAL from the Probate Court, parish of Caldwell. *Barry, J.*

*George Wear*, for Mrs. Bettie Cottingham, appellee.
*S. M. Brian*, for Jules Rose & Co., appellants.

The opinion of the court was delivered by

DeBlanc, J. On the tenth of March 1877, the administrator of the succession of Thomas T. Cottingham, filed a provisional account, in which he acknowledges having received, for said succession, the sum of one thousand fifty-two dollars and fifty cents, and having paid or classed to be paid, as privileges, twenty-four claims, amounting, in the aggregate, to $1703 70.

This account is opposed by the firm of Rose & Co. and by Mrs. Cottingham, the widow of the deceased. That firm have alleged and proved that, by its efforts and vigilance, these fraudulent acts of the said Thos. H. Cottingham have been annulled and revoked, and the property described in said acts subjected, by a decree of this court, to the payment of their claim against the succession of their deceased debtor. They now claim, by preference, the proceeds of the sale of the property which was effected by a conventional mortgage revoked at their suit.

The widow complained in the lower court that, though under the provisions of the Code, her claim under the homestead law, should be paid in preference to all other debts, except those specially mentioned in the law, the administrator had classed it as the last privilege to be paid.

The opposition of the widow was sustained, that of Rose & Co. dismissed. From the judgment of the lower court, the latter alone have appealed. They alone still urge their opposition to the administrator's account, and, from the oral and printed argument of their counsel, that opposition is now limited to the preference allowed to the widow's claim.

The creditor has an action to annul any contract made in fraud of his rights. In that action, what should be the judgment of the court? That all the property or money fraudulently *taken from the debtor's estate,* be applied to the payment of the claim of the successful creditor.

The words " *taken from the debtor's estate,*" indicate that the lawgiver had reference to a case where there has been, apparently at least, a change in the possession of the property, and when, by the creditor's diligence, by the exercise of his action, the asserted contract is partly or absolutely canceled. R. C. C. 1970, 1977.

By that action, a mortgage, as well as a sale, may be avoided; but a mortgage does not divest the title, does not change the possession, and though its cancellation entitles the suing creditor to a preference on the proceeds of the property described in the avoided contract, that preference does not, can not exclude any of the rights which, even if the mortgage had not been annulled, would have outranked the claim secured by that mortgage. The revocation of a mortgage gives to the creditor, at whose instance it was revoked, a preference over all the other creditors, with whom, otherwise, he would have been on a footing of equality. It converts into a superior right, that which, before the revocation and without it, was and would have remained a concurrent right. It gives, it creates a priority, but does not supersede or destroy an already existing priority.

It has been invariably held, by this court, that the privilege conferred on the widow and children in necessitous circumstances is superior to all other privileges, except that of the vendor and those incurred in selling the property.

Our Code has been revised, and, of the law which confers that extraordinary privilege, not a syllable has been changed.

When the succession amounts to one thousand dollars, the widow may take, less a fraction, the whole of the succession. R. C. C. 3252; 26 An. 166; 27 An. 560.

The fraudulent mortgage did not, could not, affect the priority of the widow's claim, and the success of the creditor's action against it, did not add to her right, did not regain, for her, an advantage which, otherwise, she might have lost. The rank and extent of her claim are fixed by law, and no mortgage, real or simulated, except the vendor's, could or can change the rank, or reduce the amount of that claim.

In this case, and so far as concerns the revocation of the mortgage, the creditor's diligence can not be rewarded.

The law is clear, imperative, and, as our predecessors, we must apply the law as we find it written. The widow's claim surpasses, in legal dignity, not only conventional mortgages, but even the privilege securing the payment of the expenses of the last illness and of the funeral charges. When, as in this instance, she takes the whole of the succession, she must, out of the bounty allowed her, pay these expenses and charges. This, on her part, is more than a duty, it is an obligation.

By whom, generally, are such debts contracted? Is it exclusively, by one chained to his bed by a mortal disease? Is it by one whose lips are sealed and voiceless? Is it by the future, the unnamed administrator? Who sends for the physician? Who orders the coffin? For those debts, by whomsoever they may be contracted, the wife and the children are liable. Otherwise, many a parent and husband would die for want of proper assistance, and a few might have to be buried without a coffin.

In this case, it would be a strange injustice to compel the administrator, who has paid some debts contracted by the wife, or for which she alone is liable, to deliver to that wife the entire succession of the husband, without deducting therefrom what he has paid for her.

When the husband is alive and has no property, no means, the wife is bound to provide for the household expenses; when he departs this life, and she takes all that he leaves, she is, morally and legally, bound to pay for the last services rendered by their physician, the clothes in which he was buried, his coffin and his grave.

There is no error in the decree of the lower court, and that decree is hereby affirmed; the costs of the appeal to be paid by Rose & Co.

---

MARR, J. I content myself now with simply concurring in the decree of the court, reserving the right to assign my reasons separately hereafter, if I think proper to do so.

---

### DISSENTING OPINION.

MANNING, C. J. I cannot assent to the doctrine that the widow's portion under the act of 1852 ranks the burial expenses, and those for settling the succession, nor am I aware that it has been thus invariably held by this court.

The question was first presented in Foulkes' succession, 12 Annual, 537. when the court held the contrary doctrine. The language then used was—" our construction of this law is, that the destitute widow's portion primes all privileges created previous to the death of the party and sub-

sequently to the passage of the act of 1852, except that of a vendor, but that it yields to funeral expenses, the expenses of last illness, and law charges growing out of the administration and settlement of the succession." A dissenting opinion was read in that case in which it was argued that by the terms of the act of 1852, the widow's portion must rank everything but the vendor's privilege and the expenses of selling the property, but it was an argument against the decision of the court.

In Bouvet's case 25 Annual, 431. the point before the court was, whether the widow's portion should prevail against the lessor's privilege, and in Cooley's case, 26 Annual, 166. it was whether the minor's portion under same act of 1852 primed that of the vendor of movables, and these decisions are authority on those points alone. All else is *obiter dicta*. In Rawls' case, 27 Annual, 560. it does not appear, nor can it be reasonably inferred from the language of the court, that the contest there was between the widow for her portion, and the funeral expenses and necessary law charges, but the doctrine is announced, and much too broadly, that the portion of the widow under the act of 1852 is superior to all other privileges, except those of the vendor and those to secure the payment of expenses in selling the property.

So far then from this court uniformly holding this doctrine, the Reports shew that it has never been held until the last published volume, if we may indeed so interpret that decision. I prefer to follow the dictum in the 14th Annual.

So far as I can perceive from the reports of the decisions, the question of rank between the widow and the succession privileges, necessarily created after the death of the decedent, has never been broadly presented since the Foulkes case until now. This case presents it squarely. The assets of the succession are one thousand and fifty-two dollars. The widow claims nearly all of it. The administrator had the dead man buried, paid for his grave, for decent apparel in which to bury him, paid the court charges and law expenses, confessedly necessary to properly and legally settle the succession, and presented his account with proper vouchers. He is entitled to the credits which he claims for payment of these items. Frequent decision of this question, contrary to so equitable a judgment as that, and a long and unquestioned construction of the statute in accordance with it, in cases where the question was directly involved, might induce me to adopt such construction, in deference to the principle *stare decisis*, which all courts recognize as a salutary rule. But I do not discover that the point was ever presented except in the Foulkes case and in the present, and I think the decision here should follow the decision in that case. And I prefer to rest the judgment upon that ground, rather than upon the one adopted by my brethren.