Gilmer vs. O'Neal, Sheriff, et al.

## No. 10.

THOMAS M. GILMER VS. J. B. O'NEAL, SHERIFF, ET AL.

By the provision of the Constitution of 1879 itself, (Art. 220), prior rights of homestead, arising under prior laws, are entirely unaffected by said Constitution. Therefore, in cases of homestead founded upon the law of 1865, this Court will construe and apply that law precisely as if the Constitution of 1879 had never been adopted.

A man, who was not residing on property, upon which he granted a special mortgage, cannot, by subsequently residing on it, acquire a homestead right therein.

A judicial declaration, made by a party, that certain property did not belong to him, will estop him from claiming a homestead on it, when it is afterwards decreed that the property did belong to him, and that he was only screening it from his creditors by means of a simulated sale.

Previous to the Constitution of 1879, the debtor had the right to waive his homestead. Nugent vs. Carruth, 32 An. 444, affirmed.

A debtor, who does not judicially assert his claim to a homestead upon property, before his title is divested by a sheriff's sale, loses his right thereto. Kuntz vs. Baehr, 28 An. 90, affirmed.

APPEAL from the Eighteenth Judicial District Court, parish of Bossier. *Turner*, J.

Land & Land for Plaintiff and Appellant :

First—Laws in *pari materia* should be construed together in order to ascertain the meaning of the Legislature. R. C. C. 17 ; Succession of Herbert, 5 A. 121 ; Gayle vs. Williams, 7 L. 466 ; Rouamt vs. Hunt, 17 L. 407 ; Phelps vs. Rightor, 9 R. 531. See, also, Dubreiul vs. Ronyan, N. S. 161 ; Gas Light Company vs. Nuttall, 19 L. 447 ; DeArmas' Case, 10 M. 172 ; Bank of Louisiana vs. Farrar, 1 A. 54 ; Douglass vs. Craig, 2 A. 919.

Second—The statutory homestead law of 1865, and the constitutional homestead law of 1879, are laws on the same subject-matter, and should be construed together. Revised Statutes of 1870, sections 1691, 1692 ; Constitution of 1879, article 219.

Third—These homestead laws are founded on the same considerations of public policy, and were made for the preservation of public order. Individuals cannot, by their conventions, derogate from the force of laws made for the preservation of public order or good morals. R. C. C. article 11 ; Mary L. Hardin vs. Wolf & Cerf, 29 A. 333.

Fourth—The constitutional homestead law prohibits the debtor from mortgaging his homestead ; and prohibits him from renouncing or waiving his homestead rights or exemptions. It also prohibits any court or ministerial officer of the State from enforcing any judgment, execution, or decree against the property set apart for a homestead, including such improvements as may be made thereon from time to time ; *provided*, the property herein declared to be

exempt shall not exceed in value two thousand dollars. Constitution of 1879, articles 220 and 222.

Fifth—An obligation without a cause, or with a false or unlawful cause, can have no effect. R. C. C. 1893.

The cause is unlawful when it is forbidden by law, when it is contrary to moral conduct or public order. R. C. C. 1895.

Sixth—Any consent or agreement by a debtor to renounce or waive his homestead rights, or to mortgage his homestead, or that his homestead may be seized and sold under execution, is a prohibited contract without any effect.

Seventh—Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed. R. C. C. 12.

A judgment rendered, or a judicial sale made, in violation of a prohibitory law, is a nullity so absolute that no action is necessary to set it aside. Galbraith vs. Snyder, 2 A. 492 ; Renshaw, Cammack & Co. vs. Imboden et al., 31 A. 661 ; Person vs. O'Neal, 32 A. 229.

Eighth—The doctrine that a debtor who is unable to arrest by injunction the violation of a prohibitory law, in the seizure and sale of his homestead, is thereby divested of his homestead rights, and the sale is legal and valid, is contrary to the fundamental principles of jurisprudence, and the principles of natural justice and equity.

Justinian defines jurisprudence to be the science of what is just and unjust. What could be more unjust than the seizure and sale of a debtor's homestead in violation of law, when it was impossible for him to arrest the sale by judicial process ?

L. M. Nutt and Wise & Herndon on the same side.

J. D. Watkins for Defendants and Appellees.

---

The opinion of the Court was delivered by

FENNER, J. From the mass of facts and issues presented, we select the following as decisive of the case.

Gilmer, plaintiff herein, specially mortgaged to Hamilton & Co. his plantation, in Bossier parish, to secure a debt of $9974 11. This mortgage was executed on March 18, 1872. At that date Gilmer was not living on this plantation, and had no homestead right therein. He subsequently established his residence there.

The debt and mortgage of Hamilton & Co. were duly assigned to Templeman, the defendant herein.

Thereafter, one Taylor, holder of a mortgage of anterior date, on the same property, brought suit and obtained judgment against Gilmer, upon which execution was issued, and the property seized and sold. It

was adjudicated to W. W. Sebastian, son-in-law of Gilmer, at a price which left nothing to be attributed to Templeman's mortgage, and title was made to Sebastian, who entered into apparent ownership.

Templeman then brought suit against Gilmer, Taylor and Sebastian, asking judgment against Gilmer for his debt and recognizing his mortgage; averring that the title of Sebastian was a fraudulent simulation, the result of collusion between him and Gilmer, that Gilmer was the real purchaser, and that Sebastian was merely an interposed person holding title for Gilmer as the real owner, and asking for judgment declaring the property to belong to Gilmer, and to be subject to Templeman's mortgage. To this suit Gilmer filed answer, denying that he owned the property.

After trial on these issues, judgment was rendered in favor of Templeman and against Gilmer and Sebastian, declaring the latter's title to be the title of Gilmer, and the property to belong to Gilmer, condemning Gilmer to pay the amount due Templeman, and decreeing that his special mortgage be recognized and enforced, and that the property be seized and sold to pay and satisfy the same.

From this judgment no appeal was taken, and it is *res judicata*. We find it unnecessary to detail the proceedings had under the first execution which was issued on this judgment, and the unexecuted agreements in reference thereto.

In July, 1877, a second execution was issued, under which the property was seized and advertised for sale on September 1st, 1877. On August 11th, an agreement in writing was made between Gilmer and P. B. Cash, who was the owner of a judgment of Lydia Watson against Gilmer, enforcing a mortgage against the same property, ranking that of Templeman, and who was also the assignee in pledge of Templeman's judgment. By the terms of this writing, it was agreed that Cash should buy in the property at the execution sale, provided it did not bring more than the amount due on the judgments controlled by Cash, and that Gilmer should have the right to redeem the property by paying $2600 on the 1st of December, 1877, and certain other stipulated sums at subsequent dates therein fixed. It was further agreed that, in the mean time, Gilmer should be left in possession to manage and cultivate and gather crops, and to devote proceeds, after payment of necessary expenses, to his payments under the agreement; and, finally, that if Gilmer failed to make the payments as agreed, he should "lose all right of redemption, and forfeit any payment he might have made."

On the day of sale, a further written agreement was made between Gilmer, Cash and Templeman, and filed with the sheriff, by which it was stipulated that "all the land should be offered and sold at one time, and not in legal subdivisions."

At the sale Gilmer handed the sheriff a written document, as follows : " September 1st, 1877.  Sir, I claim as a homestead 30 acres in north of N. W. ¼ of N. W. ¼ of section 17, and 30 acres, etc. (describing land,) signed : T. M. Gilmer."

The property was sold and adjudicated to Cash, and the title passed to him without interference from Gilmer.  Gilmer was left in possession, as agreed, and gathered and disposed of the crops, and a large portion of the proceeds thereof enured to his benefit.

He totally failed to make the payment of $2600 on the 1st of December, 1877, as required by his agreement, and, by the terms thereof, he thus forfeited absolutely his right of redemption, and the title of Cash became indefeasible.  Thereafter Cash sold to Templeman, as he had a right to do.

On the 23d of January, 1878, Gilmer filed his petition in the present action, averring his homestead claim, alleging that Templeman and the sheriff, O'Neal, were proceeding to dispossess him thereof, to his irreparable injury, and prayed for an injunction and for judgment, maintaining his possession and ownership of said homestead.

From a judgment of the Court *a qua* rejecting his demand, Gilmer has taken this appeal.

His counsel strenuously contends that, since the passage of the Constitution of 1879, the homestead provisions therein contained are to be taken as an authoritative interpretation by the Constitutional Convention of the true meaning and scope of the prior homestead law of 1865 ; that the two laws, being *in pari materia*, must be construed together ; and that the express provisions in the Constitution, declaring that the homestead shall not be susceptible of mortgage, prohibiting the waiver or renunciation of homestead rights, and forbidding any court or ministerial officer of the State from enforcing any judgment, execution or decree against property set apart for a homestead, must now be considered as engrafted by implication upon the law of 1865.

We can by no means assent to these propositions.  It would be easy to show that, on general principles, they would be utterly confounded, but it is unnecessary to discuss them in that light, because the constitution itself expressly declares that " rights to homesteads or exemptions under laws or contracts, or for debts, existing at the time of the adoption of this constitution, shall not be impaired, repealed, or *affected* by any provision of this Constitution."  Article 220.  The effect of this plain provision is to leave prior rights, arising under prior laws, entirely unaffected by the constitution, and to be controlled by such laws as construed and applied by the courts ; and as the right of Gilmer is founded exclusively on the homestead law of 1865, we must construe

and apply that law precisely as if the Constitution of 1879 had never been adopted.

The following objections are, each and all of them, fatal to Gilmer's claim, viz.:

First.—In a case recently decided by us at Monroe, and not yet reported, we held that where a special mortgage was given, the mortgage and homestead rights must be governed by the state of facts existing at the date of the mortgage. There the debtor owned and mortgaged the undivided three fourths of an immovable, which, by reason of the indivision, was not subject to the homestead claim. (26 A. 156; 28 A. 355; *Ib.* 608.) He subsequently acquired the remaining fourth, and then claimed the homestead, which we denied. For the reasons given in that decision, we now hold that, inasmuch as, at the date of the Templeman mortgage, Gilmer did not reside on the property, he had no homestead right therein, the property came under the mortgage free therefrom, and he could not alter, diminish, and *pro tanto*, destroy the effect of the mortgage by subsequently moving on the property and claiming the *ex post facto* homestead.

Second.—When Templeman sought to enforce his mortgage on this property, Gilmer not only failed to set up his homestead right, but denied that he owned the property, and sought to cover it from the pursuit of his creditor under a fictitious and simulated title, which he had placed in the name of another. After the judgment of the court had laid bare and annulled this simulation, and had subjected the property to the mortgage, and directed it to be sold to satisfy the same, Gilmer was estopped from contradicting the judicial allegations of his answer in order to reap a new advantage therefrom, and the title which he had denied and covered up with a view of defeating his creditor, could not, though unmasked and established by the efforts of his creditor, be considered as such *bona fide* title as was necessary to maintain the homestead claim.

Third.—We consider the agreement between Cash & Gilmer, under which he consented, beforehand and on valuable considerations, that Cash should purchase at the execution sale, had the double effect, *first* of a waiver and renunciation of his homestead claim, and, *second*, of giving to the execution sale the force and effect of a voluntary sale. We concur in the latest decision of this Court, establishing the right of the debtor to waive his homestead claim in a special property, and in favor of a special creditor, and we are perfectly clear that a man had the right to alienate his homestead by voluntary sale. Nugent vs. Carruth, 32 A. 444. On both grounds, therefore, his homestead right was destroyed.

Fourth.—If Gilmer had had a homestead right, it would have been

lost by his failure to assert it judicially before his title was divested by actual sale, and notice to the sheriff has been rightly held to be no substitute for such judicial proceeding. Kuntz vs. Baehr, 28 A. 90. At the time when he first judicially claimed the homestead, he had no title, *bona fide,* or other. The title had passed to Cash with Gilmer's approval and consent. He had held under Cash, with nothing but a right of redemption, which he had forfeited. The title had passed from Cash to Templeman. If, after this double transfer, Gilmer could still be heard to assert the homestead claim, we see no reason why his right might not have encumbered the property indefinitely.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed, at cost of appellant.

---

### CONCURRING OPINION.

TODD, J. I concur in the decree just rendered, but place my concurrence solely and exclusively upon the second and fourth grounds assigned for the conclusion reached. I dissent from the other grounds stated in the opinion as reasons for the decree. I do not think the giving of a mortgage on the homestead by the debtor, debars him from claiming its exemption from seizure. Nor do I believe that the debtor could make a valid waiver of the exemption. In my judgment, such a renunciation is against public policy, and void; and in this respect, I adhere to the decision rendered by Mr. Justice Egan, as the organ of the Court, in the case of Hardin vs. Wolf & Cerf, 29 A. 333.

Mr. Justice LEVY concurs in this opinion.