(76 South. 174)

No. 22517.

JACKSON v. HODGES et al.

(June 30, 1917.)

*(Syllabus by the Court.)*

1. EXEMPTIONS ☞93—CLAIM OF EXEMPTION—ESTOPPEL.

The fact that a farmer, having movables exempt from seizure under the homestead provisions of the Constitution, is unable to give bond for an injunction to stay a seizure and sale of the same, under execution, furnishes no ground for an estoppel which would prevent him from thereafter attacking the sale, where the property has been adjudicated to the plaintiff in execution and is still in his possession, and especially where he, through his attorney and the sheriff, were notified, in advance of the sale, that the property was exempt from seizure.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. §§ 116, 117.]

2. HOMESTEAD EXEMPTION—ESTOPPEL.

A distinction is to be drawn between such cases and those in which the owner of seized property remains silent whilst the property passes into the hands of innocent third persons, purchasing for value.

Provosty, J., dissenting.

141 LA.—32

Appeal from Second Judicial District Court, Parish of Bossier; John N. Sandlin, Judge.

Suit by Frank Jackson against Mrs. Addie Hodges and others. Exception of no cause of action sustained, and suit dismissed, and plaintiff appeals. Judgment set aside, exception overruled, and cause remanded.

Herndon & Herndon, of Shreveport, for appellant. Joannes Smith, of Benton, for appellees.

MONROE, C. J. Plaintiff has appealed from a judgment dismissing this suit on an exception of "no cause of action." He brought the suit in November, 1916, alleging that he is a farmer, living on a tract of land containing 186 acres, worth $5 an acre and incumbered by a mortgage of $630; that he is married and has minor children; that about July 18, 1915, defendant obtained judgment against him for $530, with interest and attorneys' fees, and, issuing execution thereunder, caused to be seized two mules, one wagon, 78 bushels of corn, one hog, and one mower—the corn being necessary for feed for the current year and to enable him to make a crop; that the property so seized was exempt under the homestead provisions of the Constitution; that he has no other property; and that, prior to the sale, "he gave written notice to the sheriff, and to the defendant herein through her attorney, that the property was exempt and that he was unable to give bond and stop the sale," but that the sale was made, nevertheless, and that the property was bought in by the defendant who now has it in her possession. He prays that she be cited and that he have judgment decreeing said sale to be null and ordering the return of the property, or, in the alternative, condemning defendant to pay him its value, which he fixes at the aggregate amount of $402.

Article 244 of the Constitution exempts

from seizure, under any process whatever, except as otherwise specially provided in the Constitution, and without registration, the homestead, used and occupied by every head of a family, and—

"also one wagon, or cart, two work horses, * * * one yoke of oxen, two cows and calves, twenty-five head of hogs, or 1,000 pounds of bacon or its equivalent in pork, whether these exempted objects be attached to a homestead or not, and on a farm the necessary quantity of corn and fodder for the current year, and the necessary farming implements, to the value of $2,000: Provided, that in case the homestead exceeds $2,000 in value, the beneficiary shall be entitled to that amount in case a sale of the homestead under any legal process realizes more than that sum."

Article 245 declares that the exemption so granted shall not apply as against debts due for the price of the property, or for labor, money, or materials furnished for building, repairing, or improving homesteads, or by any public officer, fiduciary, or attorney at law for money collected or received on deposit, or for taxes or assessments, or for rent, bearing a privilege; and further that:

"No court or ministerial officer of this state shall ever have jurisdiction, or authority, to enforce any judgment, execution, or decree, against the property exempted, as a homestead, except the debts above mentioned," etc.

Article 246 provides that:

Any person entitled to a homestead may waive the same "by signing with his wife, if she be not separated a mensa et thoro, and having recorded in the mortgage records of his parish, a written waiver of the same, in whole or in part."

In support of the exemption and prohibition thus provided and declared, plaintiff invokes the decisions of this court in Johnson v. Agurs, 116 La. 634, 40 South. 923, 114 Am. St. Rep. 562, and Abbott v. Heald, 128 La. 718, 55 South. 28, in both of which cases homestead property was sold in satisfaction of claims which were among the exceptions to the exemption and prohibition of the Constitution, and, having realized more than enough to satisfy them, the controversy arose in each case over the disposition to be made of the surplus, and it was held that the

debtor (in the one case) and his assign (in the other) was entitled to assert the claim for exemption to the extent of $2,000 as against such surplus so long as it remained in the hands of the sheriff or of the purchaser of the property.

The defendant herein, on the other hand, cites the decisions in Kuntz v. Baehr, 28 La. Ann. 90, Gilmer v. O'Neal, 32 La. Ann. 979, Fruge v. Fulton, 120 La. 750, 45 South. 595, and Cunningham v. Steidman, 133 La. 44, 62 South. 346, to the effect that the claim of homestead exemption comes too late when asserted after the sale of the property under judicial process, and invokes the doctrine of stare decisis.

The case of Kuntz v. Baehr arose out of a contract that was entered into at some time prior to 1876, and it was decided prior to the Constitution of 1879, when the Constitution (of 1868), then in force, contained no homestead provisions.

Defendant (Baehr) had caused certain property to be seized under executory process, and, it having been adjudicated to him, plaintiff enjoined the sheriff from putting him in possession (making him also a party defendant), on the ground that the property was his homestead, and exempt. The only homestead law then in force was Act No. 33 of 1865, now incorporated in the Revised Statutes as section 1691. It exempted from sale under execution the homestead of the debtor and certain animals, implements, etc., but contained no such prohibition as was afterwards put in the Constitutions of 1879 and 1898. The suit was dismissed by the district court upon an exception of no cause of action, and, in affirming that judgment, this court merely said:

"The judgment is correct. The sale of the property divested all of plaintiff's rights, including that under the homestead law. If he had any right to a homestead, he should have asserted it prior to the sale. His personal notice to the sheriff and the plaintiff in the seizure and sale did not amount to a legal as-

sertion of his right so as to secure or preserve the right of a homestead on the property under seizure. Judgment affirmed."

We have no means of knowing the reasons which led to the conclusion that the owner of property which is exempt by law from sale under execution is forever estopped to complain after the property has thus been sold, even though it has been adjudicated to the seizing creditor, who has parted with nothing in payment of the price and has not yet been put in possession. It may, perhaps, be inferred that the owner was presumed, by reason of his nonaction, to have waived his homestead; if so, it affords an additional reason for holding that the judgment has no application to a case arising under the present Constitution, which declares (article 246):

" * * * Any person entitled to a homestead may waive the same, by signing with his wife, if she be not separated a mensa et thoro, and having recorded in the office of the recorder of mortgages of his parish a written waiver of the same, in whole or in part."

The method of waiving the homestead, as thus provided, is exclusive and leaves no room for a waiver predicated upon a presumption.

In Gilmer v. O'Neal, it appeared that the rights of the parties originated in transactions antedating the Constitution of 1879, and as the court expressly decided, they were to be and were determined in accordance with the homestead act of 1865. Moreover, it appeared that Gilmer, the owner, had entered into a written agreement that the property should be sold, as it was sold, was allowed to remain in possession and gather a crop in accordance with that agreement, and, having failed to make a certain payment, also agreed on, brought the suit to prevent the sheriff from dispossessing him. He was at liberty in 1877 to waive his homestead, and the fact that he did not assert it until after the sale was the last, and the least, of the reasons assigned by the court for holding

that he had no standing to make that assertion, and the sole authority cited in support of that reason was Kuntz v. Baehr.

In Fruge v. Fulton it appeared that in 1893 plaintiff imposed a mortgage upon his property for a debt then incurred and for which judgment was obtained in 1898, when the property was seized and sold for its satisfaction, long after which (in 1908) he sought to recover it on the ground that it was his homestead. It was found that the Constitution of 1879 granted the homestead exemption only when the claim therefor was registered; that plaintiff's claim had not been registered; that he was therefore not entitled to the exemption; and that it was competent for him to mortgage the property when he did. And then, as in Gilmer v. O'Neal, the fact that he had not set up his claim until after the sale was given as an additional reason for denying his right to recover.

The case of Cunningham v. Steidman is therefore the only one cited by defendant in which the immediate question here presented was necessarily involved or can be said to have been seriously considered, and in that case it appeared that the property claimed as a homestead was sold in 1908, under a judgment obtained by Edwards Bros., Ltd., to A. M. Edwards, who sold it to M. T. Tucker, who sold it to Steidman, after which, in 1912, the suit was brought by the judgment debtor for its recovery, on the ground that it was his homestead. In dealing with the constitutional question now under consideration the court said:

"If the question of homestead, vel non, or the question of the property sold not having been liable to seizure from any other cause, were allowed to hang indefinitely, over every piece of property sold at sheriff's sale, where would be the safety, or confidence in titles? So in Gilmer v. O'Neal, * * * where this same prohibition was relied on, * * * the court held that the homestead right must be asserted before a sheriff's sale is made, or else the property will pass free from it. The court had previously announced the same principle under the homestead law of 1865 * * *" (referring, no doubt, to the case of Kuntz v. Baehr).

In the case thus cited judgment was rendered against Cunningham and his property was seized thereunder and offered for sale, with no notice to the public as to the character of the claim upon which the judgment was founded, and which, for aught that appeared, might have been one of those excepted by the Constitution, for which even a homestead may be seized and sold. The debtor remained silent and the sale took place; he still remained silent and the purchaser sold the property to a third person; he spoke not, and the third person sold it to another; and, finally, after a lapse of four years, the judgment debtor, defendant in execution, came into court and, assigning no reason for his silence and inactivity, demanded that the last purchaser surrender the property that he had thus bought and paid for, at public sale, made by a sheriff, acting under the authority of a judgment rendered by a competent court and a writ which directed him to seize the property of the judgment debtor wherever it might be found. The court did not deny that plaintiff might possess a homestead without recording that peculiar title; it merely denied that he could make use of that title for the undoing of others, by allowing the property to be sold and the proceeds applied to the payment of his debts, and then reclaiming it to the prejudice of the innocent purchaser.

[1, 2] The case here presented is, upon the face of the petition, quite different. Plaintiff alleges that he notified the sheriff, before the sale was made, that the property was exempt, and also notified the plaintiff in execution, through her attorney, and that he did not stop the sale by injunction because he was unable to furnish the bond which the law requires. He also alleges that the property was adjudicated to the plaintiff in execution, and that she is now in possession of it. Moreover, the property was of a character which might very well have conveyed the

warning that it was not subject to seizure, since it consisted of objects which, being on a farm where the defendant in execution lived, have, for the most part, always been exempt, just as have been the tools and implements of the mechanic. We have then a case in which, according to the allegations of the petition, a plaintiff in execution and a sheriff, assuming to proceed under the authority of a judgment and writ of a court of this state, have caused to be, and have, seized and sold, in the enforcement and execution thereof, property "exempted as homestead," though the Constitution declares, in most emphatic terms, that no judgment shall be executed or writ enforced in that way; and the only answer that is made to the demand that the wrong be righted and the Constitution vindicated is that complaint was not made until after the sale, and that it is now too late, not because, by reason of the silence and inaction of the complainant, loss and injury will be visited upon innocent third persons, not because the plaintiff in execution, to whom the property was adjudicated, will be deprived of any right or property to which she would otherwise have been entitled, but because, being unable to give bond to stay an execution which the seizing creditor and the sheriff were notified would be not only unauthorized but forbidden by law, the plaintiff herein is forever estopped to complain, and that this court, having so decided heretofore, must adhere to the doctrine of its previous decisions.

The answer, we think, is not well founded; it suggests no basis for the estoppel set up against the plaintiff herein, and, considering carefully the decisions to which the learned counsel for defendant refers, in their relation to the cases decided and to this case, we do not find that they carry the significance which he attaches to them, or establish any precedent by which we should be governed in the decision of the question here present-

ed. The language of the Constitution is unambiguous; it is a repetition of that contained in the Constitution of 1879; it was intended to establish, as the public policy of the state, that the citizen shall be protected in a home, once secured, and that the small farmer shall not be deprived of the implements wherewith to make his crop; and, being part of the supreme law of the state, it is the duty of this court, so far as the opportunity is afforded, to see that its purposes are not defeated.

The judgment appealed from is therefore set aside, the exception overruled, and the case remanded to be proceeded with according to law and to the views herein expressed; the costs of the appeal to be paid by defendant, and those of the district court to await the result.

O'NIELL, J., subscribes to the decree on the peculiar facts of this case. LECHE, J., takes no part.

See dissenting opinion of PROVOSTY, J., 76 South. 176.