(85 South. 605)

No 23762.

**PIZZOLATO v. FONTENOT, Sheriff, et al.**

(May 31, 1920.    Rehearing Denied June 30, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Judgment** &#9758;729—**Not conclusive on question not passed upon for lack of jurisdiction.**

Judgment rendered for creditors in their action to revoke sale of homestead by widower to his son could not sustain their plea of res adjudicata in widower's action to enjoin sale of his homestead, question of such exemption not having been passed upon in the revocatory action by the Court of Appeals on the ground that it had no jurisdiction.

2. **Homestead** &#9758;15—**Exemption only temporary.**

A homestead exemption is temporary, existing only so long as the conditions prevail under which it is allowed by Const. art. 244.

3. **Homestead** &#9758;189—**Simulated sale by widower set aside by creditors, did not divest him of exemption.**

Simulated sale of homestead property by widower to a son, attacked and revoked by the widower's creditors, did not divest the widower and his minor child of their homestead exemption under Const. art. 244, simulated sale being void and having no effect, though whenever the conditions under which Constitution allows exemption cease to exist, judicial mortgages, obtained by creditors in their revocatory action, will become executory.

Provosty, J., dissenting.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Wm. Campbell, Judge.

Suit by Vincent Pizzolato against Louis Fontenot, sheriff, and others. From judgment for plaintiff, defendants appeal. Affirmed.

Smith & Carmouche, of Crowley, for appellants.

Percy T. Ogden, of Crowley, for appellee.

O'NIELL, J.    Vincent Pizzolato and his wife owned, as property of the marital community, a homestead worth about $1,000, and exempt from seizure according to article 244 of the Constitution. She died, leaving four minor children, one of whom is yet a minor, dependent upon the father for support. Thereafter Pizzolato contracted debts with a number of merchants, and, being unable or unwilling to pay the obligations, made a simulated or sham transfer of his interest in the homestead to his son, Louis, who was then of age. The creditors brought suit to reduce their claims to judgment, and at the same time to have the pretended sale adjudged a simulation and absolutely void, or, in the alternative, to have the transfer annulled as a fraudulent transaction. Pizzolato and his son, as defendants in the suit, averred that the transfer was neither simulated nor fraudulent, and that the creditors had no interest in questioning the motive of

the transaction, because Vincent Pizzolato, the father, had remained in possession of the homestead with his minor child, who was dependent upon him for support, and the property was therefore exempt from seizure at the instance of the creditors.

The district court concluded from the evidence in the case that the sale from Vincent Pizzolato to his son was neither a simulation nor a fraudulent transaction. On appeal, the Court of Appeal concluded from the evidence that the transaction was a simulation or sham, made without a valid consideration, and declared the sale absolutely null. The Court of Appeal declined to pass upon the question whether the homestead was exempt from seizure, holding that the Supreme Court alone had appellate jurisdiction of that question, citing Green v. Traylor, 142 La. 492, 77 South. 127. An application was made to this court by the defendants, Vincent and Louis Pizzolato, for writs of certiorari and review, to review the decision of the Court of Appeal. But this court, believing that the Court of Appeal had committed no error in declining to entertain jurisdiction of the question of homestead exemption, and finding that all other questions involved in the case were questions of fact, refused to issue a writ of certiorari or review. The judgment of the Court of Appeal, decreeing null the sale made by Vincent Pizzolato to his son, Louis, therefore became final and executory.

Thereupon the judgment creditors caused writs of fi. fa. to issue, under which the half interest of Vincent Pizzolato in the homestead was seized and advertised for sale to satisfy their judgments.

Vincent Pizzolato then obtained a writ of injunction, preventing a sale of the property, on the ground that it was yet exempt from seizure, being his homestead. After trial of the suit, the district court rendered judgment in favor of Pizzolato, recognizing the homestead exemption and ordering the property released from seizure. The seizing creditors have appealed.

That the sale made by Vincent Pizzolato to his son Louis was a fraudulent simulation, and therefore absolutely null, is settled by the decision of the Court of Appeal. The short question presented in this appeal is whether the making of the fraudulent simulation had the effect of divesting Pizzolato of his homestead exemption. This exemption is a matter of public policy, granted only in favor of persons who have others dependent upon them for support. There is no expression in the Constitution, in the statutes, or in the jurisprudence of this state, saying whether a fraudulent simulation, in the form of a sale of the homestead, when set aside by a decree of court, shall have the effect of divesting the former owner of his homestead exemption. A majority of the courts of last resort in the other states hold that, when a fraudulent or simulated sale of a homestead has been set aside by a decree of court, at the suit of the creditors of the owner of the homestead, the property remains subject to the homestead exemption. 12 R. C. L. 506, and 13 R. C. L. 659. In 20 Cyc. 381, under the title Fraudulent Conveyances, it is said:

"As a general rule, a conveyance of a homestead cannot be fraudulent as against creditors, whether the conveyance be to the wife or to a third person, since they have no recourse to it. And, although there are cases which uphold the contrary doctrine, nevertheless the homestead right, according to the great weight of authority, is not forfeited by such a transaction or attempted transfer."

The footnotes disclose that the doctrine stated in the sentence last quoted is maintained in 15 states, and that a contrary doctrine is maintained in 7 states of the Union. In support of the doctrine that a conveyance of a homestead cannot be fraudulent as against creditors, the author cites decisions from 30 states, including one by this court,

PIZZOLATO v. FONTENOT

Succession of Cottingham, 29 La. Ann. 669. That decision, however, is not authority for the doctrine. The question at issue was not whether the property was exempt as a homestead, but whether the widow of the deceased debtor was entitled to be paid the $1,000 allowed a widow in destitute circumstances, to the prejudice of the creditors of the succession, who had obtained a judgment annulling a fraudulent and simulated mortgage placed upon the property by the deceased. The ruling was that the widow was entitled to the $1,000 by preference over the creditors who had caused the fraudulent mortgage to be annulled. The reason for the ruling was that the widow was entitled to the preference and priority over the holder of the conventional mortgage, whether valid or invalid.

The pleadings adopted by counsel for the Pizzolatos, in the suit brought by the creditors to have the fraudulent and simulated sale declared null, were in accord with the rulings of this court in at least two cases. In Gilmer v. O'Neal, Sheriff, 32 La. Ann. 979, it was held that the debtor, Gilmer, had lost his right to assert the homestead exemption by his failure to plead the exemption in the revocatory action brought by his creditors, by which they had succeeded in annulling a fraudulent conveyance of the homestead. That decision was cited with approval in Babineau v. Guilbeau, 52 La. Ann. 992, 27 South. 549. In the latter case, Babineau had made a fraudulent dation en paiement of his homestead, to his wife, in order to place the property beyond the reach of his creditor, Guilbeau. The latter instituted a revocatory action against Babineau and his wife, and obtained a decree, annulling the transfer as fraudulent, but allowing the wife's claim to the extent of $379.35, by preference over the plaintiff in the revocatory action. Thereafter Guilbeau obtained a writ of fi. fa., and the property was seized and advertised for sale. Babineau and his wife then, for the first time, asserted their homestead exemption, and sought to prevent a sale of the property. In rejecting the demand of Babineau and his wife, this court intimated strongly that, if the Babineaus had asserted the homestead exemption in the revocatory action, it would have been sustained. The court said:

"We are of the opinion that Babineau and his wife should, when Guilbeau brought suit against them to set the dation en paiement aside and subject the property covered by the same to the payment of his judgment through seizure and sale, have urged contingently the exemption of the property from such seizure and sale under the homestead laws, and that, having failed to do so at that time, it was too late after judgment to raise that issue, and that appellees' exception of res judicata is well founded."

[1, 2] The judgment rendered by the Court of Appeal, in the revocatory action brought by the creditors of Vincent Pizzolato, could not sustain a plea of res judicata, on the question of Pizzolato's homestead exemption, because the Court of Appeal very properly declined to pass upon that question, of which the court had not jurisdiction. We doubt that the homestead exemption could have been held to be a bar to the revocatory action, if the Court of Appeal had had jurisdiction of the question of homestead exemption; for it is not true that a creditor of the owner of a homestead has no interest in the debtor's retaining title to the property in his name. The homestead exemption is only temporary. It exists only so long as the conditions prevail, under which the exemption is allowed by article 244 of the Constitution. As was said in Denis v. Gayle, 40 La. Ann. 286, 4 South. 3, even a judgment declaring a debtor's property exempt as a homestead ceases to have effect as soon as the conditions, under which the homestead exemption is allowed by the Constitution, cease to exist, or as soon as any one of those conditions ceases to exist. As was said in the syllabus of the case cited and quoted with approval in Hebert v. Mayer, 42 La. Ann. 840, 8 South. 590:

"As soon as the judgment becomes inoperative, the judicial mortgages which had been properly inscribed against the owner of the property, recognized as his homestead, and which were dormant, became executory against the property even in the hands of a third possessor by virtue of a sale from the original owner."

[3] Therefore it cannot be said that the creditors of Vincent Pizzolato had no interest in suing to set aside the fraudulent and simulated sale which he had made to his son; or that the creditors have gained nothing by the decree of nullity. The property has reverted to Vincent Pizzolato subject to the judicial mortgages which these creditors have obtained against him; but the simulated sale did not have the effect of divesting Pizzolato and his minor child of their homestead exemption, because the simulated sale, being absolutely null and void, had no effect. Whenever the conditions, or any of the conditions, under which alone the Constitution allows the homestead exemption, cease to exist, the judicial mortgages held by appellants will become executory. But the judgment creditors are no better off now, so far as the debtor's homestead is concerned, than they would be if he had never made the simulated transfer of it.

The ruling in Kinder v. Trotti, 130 La. 360, 57 South. 1005, may be harmonized with the opinion now expressed, upon the finding in the case cited that the defendant could not have recovered the homestead from his wife after she had taken title from a third party, to whom the husband had transferred it. In so far as the decision cannot be reconciled with the ruling now made, it must be considered overruled.

The judgment appealed from is affirmed at appellants' cost.

PROVOSTY, J., dissents. See 85 South. 607.

MONROE, C. J., dissents from the refusal to grant a rehearing.