## In re TOUCHET.

District Court, W. D. Louisiana, Opelousas Division. February 2, 1928.

No. 3289.

L. A. Goudeau, of Lake Charles, La., for bankrupt.

W. J. Carmouche, of Crowley, La., for creditors.

DAWKINS, District Judge. This case is before the court upon petition of the trustee to review the ruling of the referee, sustaining a claim of exemption as a homestead of 14 acres of land belonging to the bankrupt.

The bankrupt was the owner of several tracts of land acquired from various persons, all of which, except one of 4 acres, were contiguous and aggregated less than 160 acres. He failed to give the addresses of two out of three creditors placed on his original schedules, and omitted entirely several others, and on the date set for the first meeting none of them appeared. Inasmuch as he had claimed practically all of the property exempt under the state homestead law, no trustee was elected or appointed, and the referee set it aside under the claimed exemption. Subsequently certain creditors appeared and moved to vacate this order, and to have a trustee appoint-

ed to administer the estate. A trustee was selected, and he asked that the bankrupt be required to surrender two pieces of real property (one, of 4 acres, some distance away from the main- body upon which he resided, and the other, 14 acres, adjoining it) to be administered for the benefit of creditors.

Certain exceptions were filed by the bankrupt to this proceeding, the chief of which was that, since the referee had previously acted upon the claim of exemption, he could not reopen the matter. This was upon the theory that, because more than 20 days had expired from the date of the order setting aside the homestead, the referee had in effect lost jurisdiction and the order had become res judicata. However, the circumstances of this case are such that, in my opinion, the representations made by the bankrupt in his petition and schedules, respecting the status of his property, amounted to a legal fraud or error, which had the effect of nullifying the ruling obtained thereon. In the first place, the bankrupt did not give the addresses of two of his three creditors, and none of them, except one who was represented by counsel, knew of the proceeding for setting apart the homestead until it had been done. The one so represented did not learn of the proposed first meeting until a day or two before the time fixed therefor, and had no opportunity to investigate the affairs of the bankrupt for the purpose of making opposition.

The trustee in this proceeding represents all creditors, and, since they have not had their day in court, I do not think the referee's action can preclude them, or that there is any basis for the alleged laches on the part of the trustee. Besides, the bankrupt represented on his schedules that the 14-acre tract was covered by a vendor's lien and mortgage equal to its value, when as a matter of fact the purchase price had been paid, and he had the canceled notes in his possession. This was not brought out until the hearing upon the motion to vacate the order allowing the exemption. It is true that the bankrupt testifies he cannot read and write, and does not speak the English language; but the record otherwise shows an extremely careless attitude towards the serious nature of the proceeding involved in preparing and submitting his schedules to the bankrupt court. It is well to say for the benefit of litigants, as well as counsel, in the future, that matters of this kind should be treated with more seriousness, and at least a reasonable effort made to disclose the true state of affairs of a proposed bankrupt, if he hopes to get a discharge from the payment of his debts. My opinion is, therefore, that there is no merit in the pleas or exceptions that the previous order of the referee was final.

The referee held that the 4-acre tract should be surrendered for the benefit of creditors, and no action has been taken by the bankrupt to have that part of the ruling reviewed. The reason the referee held this piece was not exempt was that it was entirely separated from the property upon which the bankrupt lived by other lands, and hence could not legally be considered a part of the homestead. The correctness of this conclusion can hardly be questioned.

As to the 14-acre tract, the record shows that the principal body of land of which it formed a part was made up of several small parcels, bought at different times from various persons. The bankrupt had his residence and improvements on the largest one, consisting of some 35.42 acres, and all of the property in this main body, except the 14 acres here in controversy, was mortgaged to a loan company, with a lawful waiver of the homestead. After the adjudication, this mortgage was foreclosed in the state court, and the property brought some $3,700 (having been bought in by the mother of the bankrupt, and upon which he has continued to reside), but not enough to pay the mortgage in full. He, of course, could not claim the homestead exemption of $2,000 out of the proceeds, because it had been waived.

However, he is now seeking to hold this 14 acres, because it formed part of the main body of the property, which was less than 160 acres. The contention, in effect, is that the homestead waiver was special in favor of the mortgage creditor, and since the whole tract was less than 160 acres allowed under the state Constitution, and he has received nothing from the proceeds of the sale under the mortgage, he is entitled to claim this unincumbered piece as what was left of the homestead. The referee sustained this contention.

The right to a homestead is given by section 1 of article 11 of the state Constitution, as follows:

"There shall be exempt from seizure and sale by any process whatever except as herein provided, and without registration, the homestead, bona fide, owned by the debtor, and occupied by him, consisting of lands, not exceeding one hundred and sixty acres, buildings and appurtenances, whether rural or urban, of every head of a family, or person having a mother or father or a person or persons dependent on him or her for support; also

two work horses, one wagon or cart, one yoke of oxen, two cows and calves, twenty-five head of hogs, or one thousand pounds of bacon, or its equivalent in pork, whether these exempted objects be attached to a homestead or not, and on a farm the necessary quantity of corn and fodder, hay and potatoes, for the current year, and the necessary farming implements, to the value of two thousand dollars:

"Provided, that in case the homestead exceeds two thousand dollars in value, the beneficiary shall be entitled to that amount in case a sale of the homestead under legal process realizes more than that sum. * * * "

The right to sell or waive the homestead is accorded by section 3 of this same article, to wit:

"The right to sell any property that is exempt as a homestead shall be preserved; but no sale shall destroy or impair any rights of creditors thereon. Any person entitled to a homestead may waive same, in whole or in part, by signing a written waiver thereof; provided, that if such person be married, and not separated from bed and board from the other spouse, then the waiver shall not be effective unless signed by the latter; and all such waivers shall be recorded in the mortgage records of the parish where the homestead is situated. Such waiver may be either general or special, and shall have effect from the time of recording."

It is clear from the above that even creditors without a waiver may force the sale of a homestead, provided it brings more than $2,000, in which event the claimant is allowed to take from the proceeds that sum for reinvestment in another homestead. But the excess is, under the state Code, a common pledge for the payment of his creditors. If he sees fit, with the concurrence of his wife, to waive the exemption, he thereby consents that the homestead or its proceeds may be applied to the payment of the debt or debts for which the waiver is given. To say that he may thereafter claim another exemption out of the excess is in effect to allow a second right to the homestead, which I do not believe is the purpose or spirit of the law.

A case very much in point by the Supreme Court of Louisiana is that of Bank of Erath v. Broussard, 161 La. 657, 109 So. 347. There the homesteader had given a special mortgage without waiver, and which became first in rank against the property afterwards claimed as exempt. Subsequently a second mortgage was executed in favor of another, in which the homestead was waived. The

holder of the first foreclosed thereon. The property brought enough to pay both debts, but Broussard claimed $2,000 of the proceeds as a homestead, and sought to have the junior mortgage holder with the waiver paid out of the balance. The court held that this could not be done, that the favored creditor had to look to the exempt fund, and that the excess should be applied to the satisfaction of the senior mortgage holder, who held no waiver. It was pointed out that all above $2,000 was available for the payment of his creditors, and, since the mortgage of the bank was first in rank, to allow the second mortgagee to appropriate this excess would have the effect of permitting it to consume a fund upon which the bank, but for the waiver, would have a prior right as to the whole. Broussard was denied any part of the fund as a homestead, and the whole was applied to the payment of his debts.

I can see no difference in principle between that case and the one at bar. As above stated, the Louisiana Civil Code declares that the property of the debtor is a common pledge for the payment of his creditors, and while, in the cited case, the bank occupied a preferred position as to the excess, against the mortgagee with a homestead waiver, arising from the fact that it was older and recorded first, nevertheless, if they had both been ordinary creditors, except for the special waiver in favor of the one, I apprehend that there would have been no difference in the result. The debtor had agreed that the homestead might be applied to the payment of a particular debt, and when this was done he could not claim a second right out of other funds or property.

My conclusion is that, inasmuch as the property upon which Touchet lived, and which was first claimed and set apart as a homestead, sold for more than $2,000, and the entire proceeds were consumed by the mortgage and waiver, he cannot now claim an additional right upon the remainder of the property, even though it forms part of a tract of less than 160 acres, which might have been claimed as a homestead, if it had been worth less than the sum allowed as an exemption.

For the reasons assigned, the ruling of the referee should be set aside, and the 14 acres in question, as well as the 4 acres held to belong to the estate by the referee, should be surrendered and administered for the benefit of creditors.

A decree in accordance with these views may be presented.