It is not necessary to consider the alternative defense.

For the reasons assigned, the judgment appealed from is affirmed.

St. PAUL, J., absent.

154 So. 739

HAMMOND STATE BANK & TRUST CO.
(TANGIPAHOA BANK & TRUST CO.,
Substituted) v. BRODERICK.

No. 32358.

April 23, 1934.

· Rownd & Warner, of Hammond, for appellant.

Reid & Reid, of Hammond, for intervener and third opponent.

ROGERS, Justice.

On January 17, 1928, M. P. Broderick executed his demand note for $6,000 secured by mortgage on a certain lot of ground with improvements situated in the city of Hammond, parish of Tangipahoa. The act of mortgage recites that the mortgage is given to Florrie White and any subsequent holder or pledgee of the note. No debt was due Florrie White at the time, and she merely acted as a nominal mortgagee; the intention of the parties being that the note should be retained by the maker to be used as collateral security.

Broderick, who was a resident of the parish of East Baton Rouge, pledged the note to a bank in the city of Baton Rouge as collateral for a loan, which he repaid in May, 1928. On repayment of his loan, the mortgage note was returned by the bank to Broderick, who kept it in his possession until about May 17, 1929, when he pledged the note to the Hammond State Bank & Trust Company as collateral for a loan secured from that bank. Broderick failed to discharge his debt at its maturity, and the bank brought suit to obtain a personal judgment against him and to foreclose the mortgage securing the collateral note. Broderick was cited, but failed to answer, and judgment was taken against him by default. In execution of the judgment, the bank caused the mortgaged property to be seized and offered for sale by the sheriff. A few days prior to the date fixed for the sale, M. P. Broderick, alleging that he is the head of a family, filed an intervention and third opposition asserting his homestead rights. At the time the mortgage was executed, Broderick and his family were not living on the mortgaged property, but they moved onto the property about March 17, 1928, and were occupying it on May 17, 1929, when Broderick pledged the mortgage note to the Hammond State Bank & Trust Company.

The Hammond State Bank & Trust Company having been purchased by the Tangipahoa Bank & Trust Company, the latter bank was made the party plaintiff in the original suit and the party defendant in the intervention and third opposition, to which it pleaded by exception and by answer.

On the trial of the intervention and third opposition, the court below rendered a judgment recognizing the property seized as the

homestead of M. P. Broderick, and forbidding its sale except for a price that would insure the third opponent receiving the net sum of $2,000. From this judgment the Tangipahoa Bank & Trust Company appealed.

█ It is not disputed that under our fixed jurisprudence, when a mortgage note is not for a specific debt, but for future use, and in favor of any future holder, the use of the note as collateral, and its return to the maker will not cancel the mortgage in the event of the reissue of the note. Nor is it disputed that Broderick and his family, consisting of his wife and several small children, had been occupying the mortgaged property for more than a year, during which period the mortgage note was in his possession, prior to May 17, 1929, when he pledged the note to the Hammond State Bank & Trust Company. Hence the issues in the case are (1) whether the mortgage attached to the property as of date of its execution and registry and remained in effect thereafter so that the mortgage primed the homestead exemption claimed by opponent, or whether the mortgage attached to the property only from the date of its reissue and acceptance by the Hammond State Bank & Trust Company so that the homestead exemption primed the mortgage; and (2) whether, under a mortgage in which there is no waiver by the wife, the husband claiming a homestead exemption as the head of a family is a third party within the meaning of the law.

1. This question is settled by the principles announced in Roberts v. Bauer, 35 La. Ann. 453 and Walmsley v. Resweber, 105 La. 522, 30 So. 5, 11. In Roberts v. Bauer the court held that a mortgage made by a mortgagor alone for the security of bonds to be negotiated is not ab initio invalid for want of a concurring mortgagee; but it stands as a valid unilateral contract, remaining suspended and imperfect until the bonds are issued and negotiated when the mortgage takes effect in favor of the holder of the bonds, whose acceptance of the mortgage is sufficiently evidenced by the acceptance of the bonds secured thereby. And in Walmsley v. Resweber, the court held, on rehearing, that a mortgagor in possession of notes secured by first mortgage could not reissue the notes to the prejudice of a second mortgage which he executed while he had them in his possession. The exposition of this legal principle is tersely and clearly set forth in the concurring opinion of Mr. Justice Provosty, as follows, viz.:

"A person may make his mortgage paper in this way (in favor of a nominal mortgagee and the future holders of the mortgage note) and hold it as long as he pleases, and by merely issuing it create a mortgage (Roberts v. Bauer, 35 La. Ann. 455); but, as against third persons, whose rights have attached in the meantime, the mortgage takes date and rank from issuance,—that is, from acceptance of the mortgage by the contractee,—and not from registry. So long as the maker holds the paper, there is no mortgagee and no mortgage. A person cannot, all by himself, make a mortgage. A mortgage is a contract, and a person cannot, all by himself, make a contract. He may make the evidence of a mortgage,—the mortgage notes, the mortgage act, and the registry; but he cannot, all by himself, make the contract. The contract can

come into existence only by the intervention of a second person, a contractee. Mere acceptance of the notes by such second person will create the mortgage, will form the vinculum juris; but before and until such acceptance there is no contract and no mortgage."

Under these authorities, it is plain that, during the time the mortgage note was held in the possession of its maker, the mortgage itself remained dormant and imperfect until the mortgage note was reissued by Broderick and accepted in pledge by the Hammond Bank & Trust Company. At that time, however, the right of Broderick and his family to a homestead and exemption had attached to the property. That exemption existed without registry, the mere occupancy of the place by Broderick and his family constituting sufficient notice of that fact. Const. 1921, § 1, art. 11. Thereafter Broderick could not by reissuing the note create a mortgage to the prejudice of his homestead rights.

We find nothing contrary to this view in the cases of Mente & Co. v. Levy, 160 La. 496, 107 So. 318, and Citizens' National Bank v. Loranger, 163 La. 868, 113 So. 129.

2. The appellant bank contends that the appellee, Broderick, cannot individually, or as the representative of his family, be regarded as a third person, and, as such, interpose the homestead claim as against the mortgage claim of the bank.

The protection of the family is the principal object of homestead exemption laws, and the right to such exemption is a matter of public policy. Hebert v. Mayer, 48 La. Ann. 938, 20 So. 170.

The homestead exemption is not a law for the husband and his protection but for the benefit of the wife and children as well. The whole theory and policy of the homestead exemption is founded on the principle that there is a natural moral obligation on the head of the family to provide for the support of his wife and children, which is, if not paramount, equal to his obligation to pay his debts. 13 R. C. L. verbo "Homestead," §§ 5 and 6.

Since the title to a homestead is usually vested in the husband, he must be treated as acting, at least to some extent, as the trustee of his wife and children for the protection of this right, and is necessarily vested with power to perform all acts necessary to secure the title and effectuate the design of the statute. 13 R. C. L. verbo "Homestead," § 28.

The act of the husband cannot destroy the right of the wife and children to the homestead exemption, nor can the assertion of this right be estopped by the act of the husband. Underwood v. Flosheim Bros. Dry Goods Co., 129 La. 450, 56 So. 364; Crain v. Bank of Osyka, 130 La. 945, 58 So. 824; Becker v. Hampton, 137 La. 323, 68 So. 626; Clarke v. Oden, 155 La. 801, 99 So. 605.

To make estoppel effectual as to a homestead, it must operate both as to the husband and to the wife. 13 R. C. L. verbo "Homestead," p. 662.

Since the filing of the transcript of appeal, the Tangipahoa Bank & Trust Company has gone into liquidation, and, by an order of this

court issued on March 27, 1934, Jasper S. Brock, state bank commissioner, C. C. Smith, special agent, and Alonzo L. Mixon, his assistant, liquidators of said bank, were substituted as parties plaintiff appellant and authorized to prosecute the appeal.

For the reasons assigned, the judgment appealed from is affirmed.

ST. PAUL, J., absent.