The plaintiff herein, Mrs. Mary A. Davis, is the divorced wife of Calvin Davis, one of the defendants. Judgment awarding her final divorce was rendered by the Eleventh Judicial District Court of Louisiana, on January 21, 1944. During the marriage of the parties, Calvin Davis purchased in his name several small parcels, of land in Sabine Parish, upon which the couple made their home until, for reasons not reflected from the record, Mrs. Davis left the matrimonial domicile in September, 1929, terminating conjugal relations which were never renewed. Davis continued to live upon the land, referred to above, until he sold the same to I.C. Miller and his wife, Imer Miller, also defendants herein, on November 1, 1943.
On July 19, 1929, some two months before she abandoned her husband, plaintiff, pursuant to the provisions of Act No. 35 of the Extra Session of 1921, executed a written declaration designating the referred to parcels of land as the family homestead. This instrument was signed before a Notary Public and two witnesses and was recorded in the mortgage records of Sabine Parish, whereas the Act requires registry in the Conveyance records.
The present suit was filed the day the divorce judgment was signed. Plaintiff, after alleging the acquisition of said land during the existence of her marriage to Calvin Davis, recordation of the declaration designating the homestead, rendition of final divorce between her and her husband and the fact that Calvin Davis had executed to the Millers what, on its face, purports to be a cash sale of said property, further alleged and charged that said land was an asset of the community of acquets and gains which existed between her and her husband, one-half interest therein devolving upon her in full ownership from date of said final divorce; that the ostensible act of sale by Calvin Davis to the Millers was not in fact a real sale, but, on the contrary, a sham, a fraud and a simulation arranged and executed purely for the purpose and out of the desire to cheat and defraud her of her community interest in said land; that no price whatever was paid by the Millers for the land, and no delivery of the property passed. She prays that the attacked sale be declared null and void and that same be set aside, only because it was a sham and fraudulent simulation; that the lands described therein be declared to belong to the community formerly existing between her and Calvin Davis, she owning one-half interest therein, and that partition thereof by licitation be ordered.
Defendants in limine filed a plea of res judicata to that portion of plaintiff's demand wherein it is alleged that she, as a partner in community, is owner of one-half interest in the land and entitled to a partition thereof. This plea was overruled. It will be hereinafter discussed.
Answering, defendants affirm the validity of the act of sale to the Millers, allege delivery of possession of the land therein described to them, and payment, partly cash and partly otherwise, of the purchase price recited therein; that negotiations for the sale of the property between Davis and the Millers extended over a long period prior to signing of the deed by Davis.
The lower court rejected plaintiff's demand and dismissed her suit. She appealed to this court.
 Motion to Dismiss Appeal
[1] Plaintiff litigated in forma pauperis. The record in the case was not filed in this court on or prior to the return day nor within three days thereafter; nor was any extension of time for filing the record asked for or granted. On this state of facts appellees urge dismissal of the appeal as having been abandoned and cite many Supreme Court cases having like state of facts, sustaining their position. However, the motion is without merit. Counsel for the Millers in oral argument admits that under the decision of this court in Bolton v. Eznack, La. App., 187 So. 840, 841, the motion is not well founded. He is correct. After appellant procured order of appeal to this court no duty rested upon her to see to it that the appeal was perfected by filing of the record here prior to expiration of return day or within three days thereafter. That duty rested entirely upon the Clerk of Court, and appellant, being without fault, may not be penalized because the record was not timely filed. The Supreme Court settled this question decisively in Stockbridge v. Martin et al., 162 La. 601, 110 So. 828. This court in many cases has invariably followed the rule laid down in that case. The rule applicable to appeals to this court differs from that prevailing in the Supreme Court as concerns the responsibility for filing transcripts. The motion to dismiss is overruled. *Page 653 
 Plea of Res Judicata
[2] In this plea it is alleged that plaintiff in her suit for divorce prayed, as partner in community, to be recognized as one-half owner of the property described in her petition, being the same involved herein, and for partition thereof, and that her prayer in these respects was rejected by the judgment of the court, which is now final. In her petition for divorce, plaintiff did allege that the community property should be partitioned; that she owned one-half interest therein and that it was indivisible in kind, but she did not pray in consonance with these allegations. Her prayer covers nearly a full typewritten page, but nowhere therein does she pray that her interest in any part of the community property be recognized nor did she ask for partition thereof. This being true, the judgment granting a divorce omits reference thereto. In view of these record facts it cannot be said that the judgment impliedly rejected plaintiff's right to assert ownership of the community property and to demand partition thereof.
[3] The case of Conrad v. Conrad, 170 La. 312, 127 So. 735, is in point. It was held therein, as reflected from the syllabus, that:
"Since separation from bed and board necessarily carries with it separation of goods and effects, under Rev.Civ. Code, art.155, a decree of divorce or separation from bed and board is necessarily a decree of dissolution of community, and hence does not bar suit for partition of community property because degree failed to grant such relief, where it was not asked."
 The Merits
[4, 5] Both sides labor under the belief that the effect of the declaration designating the homestead, made by plaintiff, is an issue in the case. We do not think so. Plaintiff contends that the inscription of this instrument effectively prohibited Calvin Davis from selling the homestead without her written concurrence and that, as provided by the Act, the sale by him to the Millers is null and void. Defendants set up several grounds why the declaration should not be given effect, including the failure to inscribe it in the Conveyance records.
Plaintiff alleges only that the declaration was executed by her and recorded. Beyond this no reference whatever is made to the instrument. She does not allege that the sale of the land described in the declaration is null and void, and does not pray that such sale be annulled for that reason. She prays only for annulment of the sale on the ground that it is a sham, a fraudulent simulation, without consideration.
Be this as it may, since the declaration of homestead was not inscribed in the Conveyance records, it could not have the effect for which contended. It did not operate as notice to innocent third persons desiring to purchase the property. Acts of the Legislature of this character, being in derogation of common rights, should be strictly construed. Failure in any material respect to comply with their plain requirements renders impotent that which is done.
[6] As said heretofore, Calvin Davis executed the deed to the Millers on November 1, 1943. Plaintiff filed suit for divorce on November 5, 1943. She procured issuance of a temporary restraining order on that date and a rule upon defendant to show cause why a preliminary injunction should not issue. This order temporarily restrained Davis from encumbering or alienating any part of the community property. The rule was tried on November 8th and preliminary injunction issued as prayed for.
In the present suit, plaintiff specifically charges that Calvin Davis became aware of her intention to file suit for divorce, and this information prompted him to hastily dispose of the land to the Millers with the view of defeating her community interest therein. There are some suspicious circumstances that lend strength to these charges, but we are of the opinion that they are not of sufficient potency to warrant annulment of the sale as being a fraudulent transaction or a simulation.
Mr. Miller was postmaster at Toro, Sabine Parish, and conducted a small mercantile business there. His property adjoins the land involved in this case. Calvin Davis' health had been poor for several years prior to November, 1943. Revenues from the farm were negligible. He traded with Miller and at time of said sale, according to their testimony, owed Miller Three Hundred Fifty ($350) Dollars on account and for cash advances. They also testified that the price of the sale, One Thousand ($1,000) Dollars, was paid by the extinguishment of this indebtedness, plus Six Hundred Fifty ($650) Dollars cash. *Page 654 
Davis and Miller also testified that they had been endeavoring to reach an agreement for sale of the land for some time prior to the date the deed was signed, but were unable to do so. After an agreement was reached, Davis journeyed alone to Many, the parish seat, thirty miles distant, to execute the deed. It was a holiday and the clerk's office was closed. He contacted the Clerk of Court, who, to accommodate him, opened the office, drafted the deed which Davis signed and left it with the Clerk to be filed and recorded the following day. There were no witnesses present. Signatures of two witnesses were affixed to the document before it was recorded. It is shown that the reason Mr. Miller did not accompany Davis to. Many to sign the deed was because he could not well leave the post office and his mercantile business.
Miller and Davis both testified that Miller, after Davis' return from Many, paid to Davis the Six Hundred Fifty ($650) Dollars in question, in front of the store and post office. The money was counted out then and there. A man by the name of D.C. Foster, who lives about a mile from Miller's store, testified that he was present when the cash was counted and paid and heard Davis say "that was what was left out of his place"; that he, Foster, remarked to Davis at the time "that that was a lot of money to be carrying around in these jungles."
Prior to the sale to the Millers a man named Evans lived on the land and Davis lived with him and his family. Evans paid no rent to Davis for the use of the land because, presumably, Davis was boarding with him, and occupied part of the house. Evans testified that beginning with December, after the deed to the Millers was executed, he began paying monthly rent to Mr. Miller and thereafter possessed the property as his tenant. At that time only six acres of the land were under fence. The balance was cut-over woodland.
A short time after the Millers purchased the property Davis moved away, but temporarily reserved a room with Evans to use when back on visits. It is not shown how long this arrangement was intended to last. Davis testified at the time of the trial of the case that he was living in the City of New Orleans, Louisiana.
Mr. Miller testified that he had no knowledge of Mrs. Davis' intention to sue Davis for divorce and had no actual knowledge of the registry of the declaration of homestead. He knew that Davis and wife had been separated for some fifteen years and that during this period he had continuously lived on the place, sold timber therefrom and otherwise exercised all the rights of ownership. Mrs. Miller did not testify.
To refute the positive testimony on behalf of the defendants to support the alleged genuineness of the sale, plaintiff offers no evidence of a positive character.
Concerning the fraudulent disposition of community property by the husband, Article 150 of the Civil Code provides:
"From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that suchalienation was made with the fraudulent view of injuring therights of the wife."
It will be observed from this Article that if the husband alienates immovable property of the community after institutionof suit for separation by the wife, before the sale can be annulled on the ground of fraudulent intent to cheat her, she must prove that he acted with such intent and that the alienation was consummated subsequent to the date of filing of suit for separation or divorce. In the present case the alienation occurred four days prior to institution of the divorce suit; and it has not been proven that it was fraudulently consummated. Surely, no semblance of fraud or bad faith on the hart of the Millers has been proven and, even though Davis had been motivated by a desire to circumvent his estranged wife's interest in the property, proof of this fact alone would not warrant annulment of the sale.
We are of the opinion that the lower court correctly adjudicated the issues in this case, and, for the reasons herein assigned, the judgment appealed from is affirmed with costs.
KENNON, J., takes no part. *Page 655