127 So.2d 560 (1961)
Dillard C. CLOUD et ux., Plaintiffs-Appellants,
v.
Jimmy CLOUD et al., Defendants-Appellees.
No. 173.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1961.
Rehearing Denied March 15, 1961.
*562 Maurice T. Mouton, William Ray Bradford, Jr., Alexandria, for plaintiffs-appellants.
Vincent Hazleton, Alexandria, for defendants-appellees.
Before TATE, FRUGE, and HOOD, JJ.
Rehearing En Banc Denied March 15, 1961.
TATE, Judge.
The plaintiffs, a judgment debtor and his wife, sue to set aside the sheriff's sale of certain property alleged to have been their homestead and thus exempt from seizure. Article XI, Section 1, Louisiana Constitution, LSA-Const. The principal defendants are the seizing judgment creditors and the purchaser. The plaintiffs appeal from judgment dismissing their suit upon an exemption of no cause of action.

I.
In this court the defendants-appellees have filed a motion to dismiss the appeal, since the return day for plaintiffs' appeal was June 17, 1960, while the record was not filed in the court of appeal until September 30, 1960.
From the pleadings, admissions, and documentary exhibits, the primary reason for this failure was the inadvertent omission of a minute clerk ad hoc to note the plaintiffs' oral motion and the consequent order of appeal in the civil clerk's minute book at the time that the appeal was taken in open court on April 22, 1960. The appeal was taken to the Second Circuit Court of Appeal, which had jurisdiction of it prior to the effective date (July 1, 1960) of the revision of the appellate court structure of this State (Act No. 561 of 1958, as ratified by the people, amending various sections of Article VII of our Constitution; see especially Article VII, Sections 20, 21, 30), and it was transferred by that court to us as authorized by law (see Act No. 593 of 1960).
The applicable law at all times in the First, Second and Third Circuits was and is that it is the clerk of the trial court's duty to prepare the record and lodge it timely in the appellate court and that his failure to do so will not prejudice the appeal (Article 2127, Code of Civil Procedure (1960);[1] LSA-R.S. 13:4438, as amended by Act No. 38 of 1960; Stockbridge v. Martin, 162 La. 601, 110 So. 828; Davis v. Davis, La.App. 2 Cir., 23 So.2d 651), `"in the absence of some showing to the effect that a failure to file the transcript in time is due to some fault on the part of the appellant or his attorney,'" Thibodeaux v. Pacific Mutual Life Ins. Co., La.App. 1 Cir., 95 So.2d 183, 184.
Although the appellees also rely upon a statement in a written motion of September 15, 1960 by the attorney for the appellants that the appeal was not lodged in the appellate court "through error of movers," the attorney for appellant has explainedas is evident from the context of the statement in the motionthat such statement was a typographical error and was intended to be that *563 the appeal had not been timely lodged "through no error of movers".
The motion to dismiss the appeal is therefore denied.

II.
The principal question on the merits of this appeal concerns whether the plaintiffs properly asserted their homestead exemption so as to have a cause of action to maintain this and a companion suit (Cloud v. Wells, 127 So.2d 572) to annual sheriff's sales for a sum less than the constitutionally exempted value of what the plaintiffs claim to have been their homestead. These suits were dismissed upon exceptions of no cause of action.
The pleadings and documents admitted without objection show the following:
The plaintiff Cloud was cast for a large sum as defendant in a wrongful death action instituted in the Thirty-First Judicial District Court for Allen Parish. See Sales v. Cloud, La.App. 1 Cir., 88 So.2d 251. Subsequently, the judgment was acquired by the present seizing judgment creditors made defendants herein, and they caused writs of fieri facies to issue from the Allen Parish court to the sheriff of Rapides Parish. That sheriff then seized certain properties owned by the defendant Cloud in Rapides Parish.
The present suit and its companion proceeding, Cloud v. Wells, supra, were filed in the Ninth Judicial District Court for Rapides Parish. This suit is to annual the sheriff's sale under the writs of a 23-acre tract sold after due advertisement for $1300 on November 21, 1959; it was filed in Rapides Parish three days later, or on November 24th. The companion suit, Cloud v. Wells, supra, is to annual the sheriff's sale for $500 on December 9, 1959 of a residence, out-buildings and other appurtenances located on adjacent leased premises; that suit to annul that sale was likewise filed three days after its sale, or on December 12th. Thus the properties claimed by the plaintiffs as their homestead were sold for a total of $1,800that is, less than the constitutionally exempted value of $4000.[2]
On November 20, 1959, immediately before the sale, the plaintiffs filed a petition and third opposition in the Allen Parish proceedings alleging that the property seized and offered for sale on the two separate dates was a homestead under constitutional "exemption to the extent and in the amount of four thousand dollars" (Art. 9), in which the plaintiffs prayed for service and citation upon the Rapides Parish sheriff and also upon the seizing judgment creditors. Service of this petition was accepted the same day, also before the sale, by the Rapides Parish sheriff. (We will advert to this third opposition in more detail later, as it is upon the basis of this pleading that we have concluded that the plaintiffs timely and adequately asserted judicially their right to the constitutional exemption from seizure and sale of their homestead for a sum less than four thousand dollars.)
To the presently appealed Rapides Parish suits to annual the Rapides Parish judicial sales of November 21st and December 9th respectively, the defendants initially filed exceptions of lis pendens, urging that the third opposition then still pending in the Allen Parish suit had the same object and was based upon the same cause of action, *564 so that the present Rapides Parish suits should be dismissed. These exceptions were tried on March 4, 1960, following which (later the same day) plaintiffs' counsel secured from the Thirty-First Judicial District Court a judgment of dismissal of the third opposition (which, as noted, had been filed in the Allen Parish proceedings prior to the sheriff's sales). Upon this attorney's filing herein a certified copy of this judgment of dismissal, the exceptions of lis pendens filed by the defendants in these Rapides Parish suits were immediately overruled on March 9th.
The defendants then filed exceptions of no cause and right of action to these present suits to annual the sheriff's sales. These exceptions were based upon the plaintiff's failure to allege affirmatively that the homestead exemption had been formally claimed prior to the sheriff's sales. Upon the trial of the exceptions, plaintiffs' trial counsel contended solely that oral representations of homestead rights made at the commencement of each of the sheriff's sales had sufficiently preserved the homestead exemption and that a 1938 constitutional amendment to Article XI, Section 1 had made inapplicable previous jurisprudence that the exemption is forever lost unless formally claimed before the execution sale; contentions with little merit, see Acosta v. Whitney Nat. Bank, 1948, 214 La. 700, 38 So.2d 391. The trial court accordingly sustained the exceptions and dismissed both suits.
Upon appeal, however, the plaintiffs now urge that they had in fact by formal judicial pleadings claimed the homestead exemption prior to the sheriff's sales, both by the third opposition in the Allen Parish proceedings and also by petition in bankruptcy in the United States District Court unsuccessfully (since the state court seizure had already taken place) seeking taken place) seeking to prohibit the forthcoming sales of their homestead; as well as by having orally announced at the commencement of each of the judicial sales sought to be annulled that they had claimed and were claiming as their homestead the properties about to be sold.
In connection with this argument the plaintiffs have also filed motions to remand to allow amendment of their pleadings to allege these additional facts. If not otherwise objectionable, however, the facts adverted to can be assumed for present purposes to have been pleaded (however much subject to an exception of vagueness) by Article 4 of the plaintiffs' present petitions that they "have claimed and do hereby claim the said homestead, the exemption or claim accuring [sic] to them by virtue of the laws of Louisiana"; since, for purposes of deciding an exception of no cause of action, all doubts as to the sufficiency of the allegations should be resolved in favor of the pleader, and the exception should be overruled unless it clearly discloses a lack of a cause of action. Lusco v. McNeese, La.App. 1 Cir., 86 So.2d 226; Meadows v. Preferred Acc. Ins. Co., La.App. 2 Cir., 49 So.2d 765.
For reasons shortly to be set forth, we find that the plaintiffs made sufficient and timely formal claim to their homestead exemption by the petition of third opposition filed by the plaintiffs in the Allen Parish proceedings on November 20th, prior to the sheriff's sales of November 21st and December 9th here sought to be annulled, which petition of third opposition was still pending at the time the present suits were filed.[3] We find this to be the legal effect of this third opposition, despite the very strong and most persuasive arguments of able counsel for the defendants-appellees (a) that the filing of the third opposition, by claiming the proceeds of the judicial sales, prevents the plaintiffs from afterwards attacking the sales for nullities *565 and (b) that by afterwards dismissing their third opposition the plaintiffs had abandoned whatever claim to the homestead exemption they may have had.

III.
The homestead exemption is a constitutional right arising under Article XI of our State Constitution, which pertinently provides:
"Section 1. There shall be exempt from seizure and sale by any process whatever, except as hereinafter provided, the homestead, bona fide, owned by the debtor and occupied by him, consisting of lands, not exceeding one hundred and sixty (160) acres, buildings and appurtenances, whether rural or urban, of every head of a family, * * to the total value of not more than Four Thousand Dollars ($4,000.00).
"Provided, that in case the homestead exceeds Four Thousand Dollars ($4,000.00) in value, the beneficiary shall be entitled to that amount in case a sale of the homestead under legal process realized more than that sum; if the sale does not realize more than that sum over and above all costs and expenses, said sale shall be null and void. * * *"
"Section 2. * * * No court or ministerial officer of this State shall ever have jurisdiction, or authority, to enforce any judgment, execution, or decree, against the property exempted, as a homestead, * * *"
The homestead exemption is a law of public policy of this state, the object of which "is to secure a home beyond the reach of financial misfortune, around which gathers the affection of the family, the greatest incentive to virtue, to honor, and to industry" (59 So.2d 881, below cited), on the theory that the protection of the family is of at least as paramount importance to the state as the payment of debts. Lafayette Building Association v. Spofford, 221 La. 549, 59 So.2d 880; Hammond State Bank & Trust Co. v. Broderick, 179 La. 693, 154 So. 739; Garner v. Freeman, 118 La. 184, 42 So. 767; Hebert v. Mayer, 48 La.Ann. 938, 20 So. 170. As these cases indicate, the homestead exemption is therefore liberally construed in favor of the homesteader. See In re Vincent, D.C.W.D.La.1928, 28 F.2d 396.
This constitutional exemption, founded on the public policy of this state, is enacted not so much for the protection of the husband as for that of the dependent members of his family; thus, even though a foreclosure sale is based upon prior conduct on the husband's part, he is not estopped from claiming the homestead exemption in these subsequent foreclosure or execution proceedings (such as, for instance, by his having forged his wife's name to the mortgage foreclosed upon, Barron v. Jackson Parish Bank, 184 La. 886, 168 So. 90; or by his having signed the mortgage individually, Hammond State Bank & Trust Co. v. Broderick, 179 La. 693, 154 So. 739).
On the other hand, as stated by Mr. (now Chief) Justice Fournet in Acosta v. Whitney Nat. Bank, 214 La. 700, 38 So.2d 391, at pages 392-393:
"The provisions of Section 1 of Article XI of the Constitution of 1921 granting to every head of a family the right to have exempt from seizure and sale the homestead, is not self-operative. That right can only be successfully claimed upon proper showing that the debtor is the head of a family or a person having a mother or father or person or persons dependent upon him or her for support and that the property is bona fide owned and occupied by him as such, provided that the sale does not exceed the value fixed in the constitution * * *, in which case the beneficiary is entitled to its value in cash. [Citations omitted]
*566 "The provisions in Section 2 of this article that no court or ministerial officer shall ever have jurisdiction or authority to enforce any judgment, execution, or decree `against the property exempted, as a homestead,' except for those debts designated therein, has been construed to mean that the courts and ministerial officers are only without jurisdiction or authority `to seize a homestead that has been judicially declared exempt from seizure for the debt attempted to be collected' (Jefferson v. Gamm, supra [150 La. 372, 90 So. 682, 685]), but that the district courts do have jurisdiction over the determination of the question of the claimant's right to the homestead (see cases cited supra) and also whether a particular debt is or is not one for which the homestead may be seized and sold. See, also, Cunningham v. Steidman, 133 La. 44, 62 So. 346, and Andrews v. McCreary Lumber Company, supra [155 La. 730, 99 So. 579, 33 A.L.R. 608].
"Furthermore, it is the settled jurisprudence of this court that the exemption is forever lost where the one entitled to claim it fails to do so at the time the property is seized and sold, and this is so even so far as the dependent wife and minor children, or other dependent members of the family, are concerned. See, Andrews v. McCreary Lumber Company, supra; also, Kuntz v. Baehr, 28 La.Ann. 90; Gilmer v. O'Neal, 32 La.Ann. 979; Babineau v. Guilbeau, 52 La.Ann. 992, 27 So. 549; Fruge v. Fulton, 120 La. 750, 45 So. 595; Cunningham v. Steidman, supra, and Edwards Co. v. Hano, 188 La. 632, 177 So. 691."
When the homestead has been sold as sheriff's sale, the homestead owner may nevertheless claim from the proceeds the monetary amount of the constitutional exemption by instituting his claim therefor at any time before the sheriff or the purchaser disburses the proceeds from the sale, even though the owner did not formally claim his homestead prior to the sale. Coleman v. Continental Bank & Trust Co., 139 La. 1078, 72 So. 742; Johnson v. Agurs, 116 La. 634, 40 So. 923, 114 Am.St.Rep. 562.

IV.
In the instant case, the defendants-appellees contend that the plaintiffs' proper remedy to protect their homestead exemption was to have enjoined the Rapides Parish sale rather than to have filed a third opposition in the Allen Parish proceedings.
However, so long as a homestead has not been judicially declared exempt from seizure, it is subject to seizure and to be offered for sale to determine whether it is worth more than the constitutionally exempted value; the homestead claimant may not enjoin the sale itself prior thereto, although he may enjoin its being sold for less than the constitutionally exempted value. Daniel v. Thigpen, 194 La. 522, 194 So. 6; Oden v. First Nat. Bank, 182 La. 591, 162 So. 189. The judgment creditor assumes the risk of being taxed with the court costs if no offer greater than the constitutionally exempted value is received at the execution sale. Succession of White, 170 La. 403, 127 So. 883.
But the homestead claimant is also permitted to assert his claim to homestead exemption on behalf of himself and his dependants by third opposition in the seizure proceedings (Hammond State Bank & Trust Co. v. Broderick, 179 La. 693, 154 So. 739; Abramson v. Larrabee, 134 La. 833, 64 So. 766; Peoples' Bank v. Levert, 133 La.App. 494, 63 So. 601), even though technically the third opposition "is a demand brought by a third person not originally a party in the suit, for the purpose of arresting the execution of an order of seizure or judgment rendered in such suit, or to regulate the effect of such seizure in *567 what relates to him," Code of Practice Art. 395[4]
The opponent claiming ownership of or privilege upon the property seized (C.P. Art. 396) must file this opposition "before the court which has granted the order of seizure or the judgment in virtue of which the provisional seizure has been effected." (C.P. Art. 397).[5] Although the opponent upon giving proper security may enjoin the sale (see C.P. Art. 399), he is not obliged to do so (see Brugier v. Miller, 114 La. 419, 38 So. 404), and if he does not and subsequent to the sale "the opposition be sustained, the sale made by the sheriff shall be null," C.P. Art. 400.[6] See Tilly v. Woodham, La.App. 2 Cir., 166 So. 876; cf. LSA-C.C. Art. 2452.
See also C.P. Article 684; "* * * if the price offered in this case by the highest and last bidder, is not sufficient to discharge the privileges and mortgages existing on the property, and which have a preference over the judgment creditor, there shall be no adjudication, and the sheriff shall proceed to seize other property of the debtor, if there be any."
Unquestionably, then, the plaintiffs' right to claim their constitutional homestead execution could have been properly preserved by their filing prior to the date of the sale the third opposition in the Allen Parish proceedings, as a result of which (if the claim made by the opposition were sustained) the sheriff's sales of the homestead in Rapides Parish were subject to being declared null.

V.
The principal contention made by the defendants-appellees, however, is that in any event the homestead claimants did not prior to the sale by the third opposition seek to have the sales prevented if no offer higher than the constitutionally exempted value was received, but rather sought to recover the proceeds of the sale. If the further suggested that, in any event, the plaintiffs abandoned their claim to the homestead by dismissing the third opposition which had been filed prior to the sheriff's sales.
In view of the substantial contentions that the third opposition did not adequately set forth the plaintiffs' claim that the property could not constitutionally be sold at sheriff's sale for less than four thousand dollars above all costs and expenses, we are quoting in full pertinent allegations and prayers thereof and the only restraining order issued by the Allen Parish court upon its filing.
The petition alleges:
"8.
"The properties seized under the said Writs and to be sold on two different *568 dates, to wit: 21 November and 9 December, 1959, are in reality one and the same piece of property, and constitute one homestead and farm, under one fence and cultivated and possessed entirely by petitioners as his homestead and farm, and the homestead and family dwelling-place of his family and dependents; that because the petitioners' homestead is in effect being sold in two separate pieces and on two separate dates, to wit: 21 November and 9 December, 1959, your petitioners cannot properly assert their Constitutional exemptions; for the reason that the petitioners' homestead is actually being sold in two different parts on two different dates, the said sale is and would be entirely null, void, unlawful, illegal and without effect.
"9.
"Under the provisions of Article 11, Section 1, Constitution of the State of Louisiana, 1921, petitioner Dillard Cloud, as the head of his family, employing the said property as his homestead and the homestead of his family and dependents, enjoys an exemption to the extent and in the sum of Four Thousand and No/100 Dollars, which amount petitioner is entitled to be paid out of the proceeds of the sale or sales of his homestead, in preference and with priority over any other person or persons, creditor or creditors, assignee or assignees, whomsoever they may be."
In the prayer of the third opposition, the plaintiffs prayed that:
"3. After all delays have elapsed, and after due hearing hereof, petitioners' Constitutional and legal exemptions and claims set forth above be recognized, sustained and maintained, and that the proceeds of the two sales of petitioners' properties be made to and paid to petitioners up to and including the full sum of Four Thousand and No/100 Dollars in preference and with priority over all other claims whatsoever, and before all other persons whomsoever.
"4. In the meantime, and until this Honorable Court has heard petitioners' claims and demands, and orders proper disbursement of the proceeds from the sale or sales hereinabove described, the said Grady L. Kelly, Jr., sheriff and Ex-Officio Auctioneer of Rapides Parish, Louisiana be ordered and restrained to hold in his hands and from paying out or delivering to any person or persons whomsoever, the proceeds of the said sales or sale of petitioners' properties on 21 November and 9 December 1959, whatever the said proceeds may be.
"5. All orders and decrees necessary and proper herein be issued, and that petitioners be given such relief as law, equity and the nature of this case may allow permit."
By the ex-parte restraining order obtained, the Rapides Parish sheriff was only
"restrained and prohibited from delivering to or paying out to any person or persons whomsoever they may be for any cause whatsoever any and all proceeds derived from the sale or sales of petitioners' properties to be held on 21 November 1959 and 9 December 1959, at the usual hour and place for such public sales or auctions * * * said Sheriff and Ex-Officio Auctioneer [to] hold in his hands any and all such $4000.00 derived, until further order of this court. * * *"
In making this contention, the able counsel for the defendants-appellees relies upon jurisprudence that the homestead exemption is forever lost where the one entitled to claim it fails to do so formally before or at the time the property is seized and sold. Acosta v. Whitney National Bank, 214 La. 700, 38 So.2d 391; Andrews v. McCreary Lumber Co., 155 La. 730, 99 *569 So. 579, 33 A.L.R. 608; Cunningham v. Steidman, 133 La. 44, 62 So. 346; Fruge v. Fulton, 120 La. 750, 45 So. 595; Gilmer v. O'Neal, 32 La.Ann. 979; Williston v. Schmidt, 28 La.Ann. 416 and Kuntz v. Baehr, 28 La.Ann. 90. See also Edwards Co. v. Hano, 188 La. 632, 177 So. 691.
Except for holding that a personal notice to the sheriff not in the form of a judicial pleading was an insufficient formal claim of the homestead exemption to invalidate the subsequent sale thereof (see Gilmer and Kuntz cases, above cited), it is to be noted that these cases do not specify any sacramental method by which the formal claim to the homestead must be asserted prior to the judicial sale. The decisions further admit that the pre-requisite of a formal claim of the homestead exemption prior to the judicial sale is not found in the constitutional provision itself, the language of which mandatorily provides that sales of homesteads for less than the constitutionally exempted value are null and void; but that this pre-requisite rather results from judicial interpretations that if homestead claims to property previously sold are subsequently recognized despite the absence of a formal claim to the exemption made prior to the sale, the stability of all land titles emanating from sheriff's sales is endangered, a result that the authors of the constitution must not have intended.
Thus, as stated in Cunningham v. Steidman, 133 La. 44, 46, 62 So. 346:
"The plaintiff contends that the said provision of the Constitution taking away from the courts all authority to cause a homestead to be sold being a prohibitory law, and, whatever is done in violation of a prohibitory law being null and void, said sheriff's sale is null and void.
"There is no answer to this logic; but unfortunately the infirmity and imperfection of human nature will not allow of the affairs of society being regulated always on strict logical principles. In practice, in the interest of public order and the stability of titles * * * If the question of homestead vel non or the question of the property sold not having been liable to seizure from any other cause were allowed to hang indefinitely over every piece of property sold at sheriff's sale, where would be the safety or confidence in titles?"
See also the comment of Chief Justice O'Niell in Andrews v. McCreary Lumber Co., 155 La. 730, 735, 99 So. 579, 581, 33 A.L.R. 608:
"It is not reasonable to suppose that the authors of this [constitutional] provision intended that every land title emanating from a sheriff's sale for debt should stand always exposed to attack upon the ground that the land was a homestead, exempt from seizure when it was sold, and that therefore the court whose decree was executed was without jurisdiction."
In most of the cited cases the claimants to the homestead exemptions did not make any claim thereto until many years after the property was sold, and in none of them did the claimants make such claim by any formal legal pleading prior to the judicial sale.
The facts in the present case are quite dissimilar. The homestead claimant at all times prior to the sale made formal claim by judicial pleadings to his homestead exemption. By third opposition filed in the proceedings from which the execution had issued, the claim that the seized property was a homestead subject to constitutional protection was fully disclosed, and by reference thereto both the seizing creditors and the purchasers at the judicial sale forming part of such proceedings were or could be fully informed that the judgment debtors had invoked the protection of the constitutional exemption from sale of what they claimed to be their homestead for a value less than four thousand dollars. This claim to constitutional exemption has been *570 continuously asserted, both by the present suits and by the Allen Parish third opposition (which had been filed prior to the sale and which was pending at the time these suits were filed and for four months thereafter), the latter being dismissed only because by exceptions of lis pendens in the present suits the defendants-appellees had declared that the Allen Parish third opposition was "another suit between the same parties for the same object and growing out of the came cause of action". Under these circumstances, the dismissal of the one legal proceeding or the other cannot be said to have been an abandonment by the plaintiffs of their claim to the constitutional exemption from sale for a sum less than four thousand dollars, a claim continuously asserted from prior to the sale until the present moment.
Therefore, where no question of stability of land titles is at issue, especially in view of the liberal construction to be given to the homestead exemption ("this special, separate, constitution-conferred tenure," Speyrer v. Miller, 108 La. 204, 208, 32 So. 524, 526, 61 L.R.A. 781), we feel that (assuming that the facts urged, accepted as correct for purposes of this exception, are proved at the trial on the merits) the Louisiana courts under these circumstances must enforce the specific constitutional provision, founded on the public policy of this State, that if the sale of a homestead does not realize more than four thousand dollars, "said sale shall be null and void", Art. XI, Section 1, Louisiana Constitution.
Although we do not think they are applicable, in fairness to the defendants-appellees we must state that we have found two decisions in which a homestead exemption was not recognized subsequent to a completed judicial sale, although prior thereto a claim of homestead had been formally made by legal proceedings:
In Babineau v. Guilbeau, 52 La.Ann. 992, 27 So. 549, the homestead claimant was held barred by res judicata from claiming the exemption when the property was subsequently seized, on the ground that he might have pleaded it as a defense on the merits to the judgment under which the property was seized[7]a holding inapplicable here, because the present claimant's homestead exemption or the homestead property itself was not even remotely at issue in the Allen Parish tort suit which eventuated in the judgment in execution of which the present judicial sales were made (see Abramson v. Larrabee, 134 La. 833, 64 So. 766).
And in Jefferson v. Gamm, 150 La. 372, 90 So. 682, the judgment debtor claiming the homestead was held barred from claiming the exemption as against a third party purchaser at the sheriff's sale by the well settled jurisprudence that the validity of a judicial sale made in execution of a judgment after the judgment became executory, cannot be affected by the subsequent reversal of that judgment upon devolutive appeal. See State v. Mutual Inv. Co., 214 La. 356, 37 So.2d 817. This jurisprudence is of course entirely inapplicable to the present situation, where moreover the homestead claimants had asserted their rights by a third opposition filed prior to the sale, the statutory effect of which pleading filed is to preserve their right to attack the validity of a judicial sale made during the pendency of the opposition to the sale under execution. C.P. Art. 400; Ludeling v. Graves, 3 La.Ann. 597; Tilly v. Woodham, La.App. 2 Cir., 166 So. 876[8]; Favrot v. Paine & Bourgeois, Inc., 1 Cir., 9 La.App. 30, 118 So. 775, certiorari denied *571 (where the opposition was made by a separate suit and the sale was made during the pendency of same on devolutive appeal from a judgment of dismissal); Exchange National Bank v. Palace Car Company, 2 Cir., 1 La.App. 307.
Neither the Babineau nor the Jefferson decisions, above cited, are thus authority contrary to the result we have reached herein.

VI.
It is finally contended by able counsel for the defendants-appellees that, by merely claiming the proceeds of the sale by third opposition rather than enjoining it, the claimants judicially admitted the validity of the sale so as to be precluded from attacking it, since "one cannot judicially claim the proceeds of a judicial sale and afterwards attack the sale for a nullity." Womack v. McCook Bros. Funeral Home, 194 La. 296, 193 So. 652, 654.
Although there is considerable force to this contention, a homestead claimant may, as previously noted, properly assert his claim by third opposition rather than by injunction. Further, a claim to the constitutional homestead exemption is both a claim to the nullity of the sale if for less than the exempted value as well as a claim to the proceeds up to such value, if the sale is for less. The cited jurisprudence is thus inapplicable.
We may add that, however inartistically stated, the allegations (including that "the sale is and would be entirely null, void, unlawful, illegal and without effect") and prayer (including that "petitioner's Constitutional and legal claims set forth above be recognized, sustained and maintained" and for "such relief as law, equity and the nature of the case may permit") of the third opposition herein relied upon, adequately claimed the nullity of the sales if for less than the sum of four thousand dollars, as well as the proceeds up to this constitutionally exempted value if the property sold for a greater amount, considering the constitutional sanctity of the homestead exemption and the liberal construction to be accorded claims to it.
Finally, we are not unmindful that, by seizing and offering for sale on two separate dates the different portions of the alleged homestead separately seized, the judgment creditors who are defendants herein made it most difficult for the plaintiffs to proceed otherwise than was done, for the homestead claimants were unable to ascertain whether the sales were null for an insufficient price until after both sales had taken place and the total of the amounts offered and the court costs of both sales had been calculated.

Decree.
For the reasons therein set forth, the judgment herein sustaining exceptions of no right and cause of action and dismissing the plaintiffs' suit is reversed, and the cause is remanded for further proceedings according to law and not inconsistent with the views herein expressed. Defendants-appellees to pay all costs of this appeal; all other costs to await final determination of these proceedings.
Reversed and remanded.

On Application for Rehearing
PER CURIAM.
The defendants-appellees filed an application requesting a rehearing of our original judgment herein, which overruled an exception of no cause of action.
The plaintiffs-appellants moved to dismiss this application for rehearing, urging that under the rules of this court we cannot consider it since our judgment did not finally dispose of this case but merely remanded it for further proceedings in the district court. Counsel rely upon Rule XI, Section 4, Uniform Rules of the Courts of Appeal (1960), which pertinently provide:

"An application for rehearing will not be considered when the judgment of this court has merely overruled a motion to dismiss an appeal, or when, *572 for any other reason the judgment of this court has not finally disposed of the case * * *." (Italics supplied.)
While counsel plausibly argues that our judgment did not finally dispose of this "case", since we remanded it for trial below, the meaning of the quoted rule is that no application for rehearing will be considered when the appellate court's judgment has not finally disposed of the appeal, i. e., of the case in the appellate court. See Frederick v. Brown Funeral Homes, 222 La. 57, 62 So.2d 100, 39 A.L.R.2d 986. Judgments of the courts of appeal do not become final until either (1) the delay to apply for rehearing expires without application therefor being made timely or (2), when timely application for rehearing has been made, at an interval after the denial thereof to allow for timely application to the Supreme Court for a writ of certiorari. See LSA-R.S. 13:4446, subd. E, as amended by Act 38 of 1960; LSA-C.C.P. art. 2167.
The above-quoted Court of Appeal Rule XI, Section 4, follows almost verbatim the Louisiana Supreme Court rule presently denoted as Rule XII, Section 5. Despite contentions identical to the present, when an original judgment of that court had remanded the case for further proceedings in the district court, such Supreme Court rule was held not to prevent consideration of an application for rehearing, Frederick v. Brown Funeral Homes, above cited.
In support of their motion to dismiss the application for rehearing, the appellants cite Suarez v. Suarez, 158 La. 682, 104 So. 616 and State v. White, 156 La. 770, 101 So. 136. The Supreme Court did, on the basis of the court rule relied upon, state its inability to consider applications for rehearings in these instancesbut in neither case did the original judgment finally dispose of the appeal in the appellate court. (The former decision concerned a judgment which had temporarily remanded the cause to correct the minutes, so that the appeal might then be determined; the latter involved a judgment which merely overruled a motion to dismiss the appeal.) Thus the cited holdings are not applicable here, where after a hearing on the merits our judgment overruling an exception of no cause of action had not become final in this court.
We are thus able to and will consider the application for rehearing filed herein by the defendants-appellees. After thorough consideration of it and of the contentions so ably stated in their counsel's supporting brief, we remain unconvinced that our original judgment was incorrect.
Accordingly, the application for rehearing is denied.
CULPEPPER, J., recused.
FRUGE, J., is of the opinion that a rehearing should be granted.
NOTES
[1] Under this codal article this principle now applies in all Louisiana appellate courts.
[2] At this point it should probably be stated that the plat forming part of the proceedings (which will be accepted as correct for purposes of deciding this exception) indicates that the residence and other improvements on the leased premises and the adjacent 23-acre tract are under one fence and form one farmstead. Although no improvements are situated on the 23-acre tract owned in fee by the plaintiff Cloud, he may nevertheless claim his homestead exemption: both as to his home owned by him but situated on land leased by him from another (In re Vincent, D.C.W.D.La.1928, 28 F.2d 390), and also as to the connected tract owned in fee by him even though his adjacent home is not itself situated upon this land owned by him (Succession of Veronie, 147 La. 12, 84 So. 439).
[3] It will be unnecessary therefore to discuss what effect the homestead claim in the bankruptcy proceedings and the oral representations of the claim at the commencement of the sheriff's sales did or did not have in this regard.
[4] Unless otherwise indicated, all references hereinafter to Code of Practice articles refer to the Code of Practice of 1870, which at the time all events below took place had not been replaced by the Code of Civil Procedure, Act No. 15 of 1960.
[5] Actually, despite the mandatory codal language, the third opposition is also permitted to be filed as a separate suit in the district court of the parish where the property was seized, see San-I-Baker Corp. v. Magendie, 157 La. 643, 102 So. 821.
[6] This Codal article in full provides: "If the third person, who has intervened in the suit, has not enjoined the sale of the property of which he claims the ownership, or has failed to furnish the surety required, his opposition shall not prevent the sheriff from selling the property under seizure; but in such case the sheriff shall be personally responsible for all damages which said sale may occasion to the intervening party; and the sheriff shall have his recourse against the party who has obtained the order of seizure. If the opposition be sustained, the sale made by the sheriff shall be null; provided that in all such cases the sheriff may require of the plaintiff an indemnity bond, with sufficient securities, as provided by special laws."
[7] A holding, incidentally, at variance with the civilian and modern Louisiana rule as to what constitutes res judicata. See Quarles v. Lewis, 219 La. 194, 52 So.2d 713. See also Lee v. Cooper, 155 La. 143, 98 So. 869.
[8] This decision specifically discusses the inapplicability of Jefferson v. Gamm, as well as similar decisions, to a sale made during the pendency of a third opposition, the effect of which is instead regulated by C.P. Art. 400. See 166 So. 877-878.