127 So.2d 809 (1961)
Mike VIDRINE et ux., Plaintiffs-Appellants,
v.
Dr. James W. MAYES, Defendant-Appellee.
No. 204.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1961.
Rehearing Denied March 29, 1961.
*810 J. Minos Simon, Lafayette, for plaintiffs-appellants.
Adams & Reese, by St. Clair Adams, Jr., New Orleans, Bernard Marcantel, Jennings, for defendant-appellee.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
The plaintiffs, husband and wife, sue the defendant doctor for damages arising out of the death of a child born dead, charging that this death resulted from the physician's failure to attend the plaintiff wife during childbirth. A trial before a jury resulted in a unanimous verdict in favor of the defendant. The plaintiffs appeal from the consequent judgment dismissing their suit.

I.
The defendant was moved to dismiss the appeal, since the record was not lodged in this court until December 5, 1960, although the return day fixed by the order of appeal was July 15, 1960 and no extension was thereafter secured.
The defendant appellee relies upon Townsend v. Graham, La.App. 3 Cir., 124 So.2d 405. However, this decision is inapplicable. It concerned an appeal correctly taken to the Supreme Court in 1958 (and subsequently, upon the constitutional revision of appellate jurisdiction, transferred to the appellate court of appeal, see Act 593, of 1960, amending Article VII, Section 30, Louisiana Constitution, LSA-). The former Supreme Court rule, applicable to the appeal in the Townsend case, was that it was the duty of the appellant and not of the trial clerk to lodge the transcript timely, subjecting the appeal to dismissal upon default by the appellant.
However, the rule now in all appellate courts is (as it has always been in the First, Second, and Third Circuits) that it is the duty of the trial court clerk and not of the appellant to lodge the record timely, so that an appeal will not be dismissed as tardily filed unless there is a showing that the non-timely filing is due to fault on the part of the appellant or his attorney. Art. 2127, LSA-Code of Civil Procedure (1960); LSA-R.S. 13:4445, subd. B, as enacted by Act 38 of 1960, effective as emergency legislation, June 20, 1960; Cloud v. Cloud, La.App. 3 Cir., 127 So.2d 560; Elliott v. Mowad, La.App. 3 Cir., 125 So.2d 461. In the absence of such showing in the present case, we deny the motion to dismiss the appeal as tardily filed.

II.
On the merits, the plaintiffs-appellants, in claiming that the defendant doctor *811 breached a duty to attend the plaintiff wife at childbirth, rely upon the principle summarized at 70 C.J.S. Physicians and Surgeons § 48 f(1), p. 964, as:
"A physician or surgeon, on undertaking an operation or treatment, is under the duty, in the absence of an agreement limiting the service, of continuing his attendance, after the operation or first treatments, as long as the case requires attention." (Italics ours.)
Plaintiffs' theory of the case is that the death of the child resulted from the defendant physician's failure to go to her home when complications set in during childbirth, he instead requesting that the mother be brought to the hospital.
The evidence shows that the plaintiff wife, residing in a rural home near Oberlin, consulted the defendant physician at his office in Kinder, some nine miles distant, during the early stages of her pregnancy in June 1958 and was checked by him several times at his office during the remainder of the year. On December 17, 1958, finding that childbirth could be expected within two weeks, the defendant gave her a thorough check-up. On this date, for the first time, as admitted by the plaintiff wife, she inquired whether the doctor could deliver the child at her home and was informed that this could not be done, since the home lacked the facilities available at the Kinder hospital for safe childbirth, especially in the event of complications.
Accordingly, the plaintiffs made arrangements for an aged Negro midwife to attend during delivery. This midwife, however, when summoned just after midnight on December 20th, immediately advised the plaintiffs to secure a doctor, upon seeing that the birth was going to be difficult and accompanied by complications. Calls were placed to two other doctors, as well as eventually to the defendant; and all three physicians advised that the wife be brought to a hospital, where necessary surgical and medical facilities were available. Finally, at 6:30 in the morning the plaintiff wife was brought to the hospital, the unborn baby already dead; her own life was saved by the medical intervention of the defendant.
Under these facts, the defendant did not breach any duty, contractual or otherwise. As the trial court stated, in its charge to the jury, a physician is not required to accept professional employment on terms determined by the patient but may limit his obligation by undertaking to treat or care for the patient only in a hospital rather than the patient's home." (Actually, the record does not reflect that the pre-natal treatment contemplated an agreement to deliver the child, in the absence of any discussion on the question, as many patients of the plaintiffs' economic status preferred to have the delivery made at a charity hospital in Pineville or by midwife.)
Furthermore, as shown by the evidence, no physician in the area any longer undertakes childbirth in the patient's home, but all require, even (and especially) in emergency conditions, that the expectant mother be brought to the hospital, where the facilities of modern medicine are available to afford the safest possible delivery. In addition, the particular complication that occurred in this case, technically termed a "hand presentation" (where the hand is born first), creates a most dangerous situation to both mother and child, and the necessityto save the mother and possibly save the childof a complicated and difficult medical procedure technically known as a "version and extraction", whereby with the mother under deep anesthesia the child is reinserted in the womb and then turned around and delivered feet-first; a procedure which can be performed safely only with the facilities of a hospital delivery room available.
Thus we find that the defendant doctor, as well as the other two physicians contacted, advised the safest possible procedure under the circumstances, namely, that the *812 mother be brought at once to the hospital for the delivery; and that the doctors were not at all responsible for the six-hour delay within which the plaintiff wife was not brought to a hospital and during which the unborn baby died. In short, under the evidence of this record, the actions of the defendant physician instanced a full performance of any legal, ethical, or humanitarian duty to the plaintiff wife, and accordingly he is of course not liable to the plaintiffs for the tragic death of their baby.
For the foregoing reasons, at the cost of the plaintiffs, the trial court judgment is
Affirmed.

On Application for Rehearing.
En Banc.
PER CURIAM.
In application for rehearing, able counsel for the plaintiffs-appellants suggests that in our original opinion we failed to dispose of their allegations of error arising from the trial court's failure to give certain charges to the jury.
All of these requested charges were adequately given to the jury by the trial court, in slightly different wording, except those charges which stated that the defendant-doctor, upon first examining the plaintiff wife for her pregnancy, was ipso facto under a duty to deliver her child at her home some months later unless he then and there expressly limited his obligation to do so. For the reasons more fully stated in our original opinion, we felt that neither under the applicable law nor the facts of this case would such charges be a correct statement of the legal principles applicable. The trial court correctly charged the jury that it was a question of fact for the jury to determine whether there was an express or implied agreement for the doctor to deliver the baby at the plaintiffs' home; and, as noted, the jury's determination that there was no such agreement was not erroneous.
The application for rehearing is denied.